**William Geary FORD, Plaintiff,**

v.

**CITIZENS AND SOUTHERN NATIONAL BANK; John Coleman; Stanley D. Tilley; and David P. Soulis, Defendants.**

Civ. A. No. 4:88–cv–246–HLM.

United States District Court,
N.D. Georgia,
Rome Division.

Dec. 2, 1988.

Harvey D. Harkness, Macey Wilensky Cohen Wittner & Kessler, Atlanta, Ga., for Ford.

Ben F. Johnson, III, Jennifer Ann Brown, Alston & Bird, Atlanta, Ga., for Citizens and Southern Nat. Bank, and John Coleman.

Mark J. Kadish, Office of Mark J. Kadish, Hayes Michael Dever, Office of H. Michael Dever, Atlanta, Ga., for Tilley, and Soulis.

ORDER

HAROLD L. MURPHY, District Judge.

Plaintiff William Ford filed this civil action based on events that occurred on August 12, 1988. According to the complaint, Ford's wife, Vickie Ford, worked for the law firm of Tilley & Soulis and had "single signature authority" on an escrow account at Defendant Citizens and Southern National Bank (C & S). The account became overdrawn, and Defendant Coleman, a C & S officer, called a meeting at the bank on August 12, where he stated that unless Tilley, Soulis and Vickie Ford signed a promissory note for a loan to cover the overdrawn amount and fully collateralized the note, he would have to dishonor certain checks and notify the FBI. William Ford alleges further that Coleman stated the law firm would be destroyed as a result and Vickie would go to jail.

William Ford was summoned to the bank, where Coleman, Tilley and Soulis advised him that certain property, of which he was the sole owner, was needed to secure the promissory note. He claims he was threatened of dire consequences if he did not execute a deed to secure the debt, and did so under duress.

In Counts II and III of the complaint, Ford charges C & S and Coleman with violations of federal regulations concerning extensions of credit. In Count IV, he charges all the defendants with engaging in racketeering activity. In Counts V and VI, he charges the individual defendants with violations of Georgia law. Defendants move to dismiss the complaint or for judgment on the pleadings. They contend that the federal question counts fail to state claims for relief and that there is no independent subject matter jurisdiction for the state law claims. The Court will address the arguments in the sequence of the counts.[1]

*Count II—Regulation B of the Equal Credit Opportunity Act*

In Count II, Ford alleges that C & S and Coleman violated 12 C.F.R. § 202.7(d)(5) of Regulation B of the Equal Credit Opportunity Act (ECOA) by requiring Ford to be an additional party to support the extension of credit. Under ECOA, "[a]ny creditor who fails to comply with any requirement imposed under this subchapter shall be liable to the aggrieved party for any actual damages sustained by such applicant." 15 U.S.C. § 1691e(a). Section 202.7(d)(5), a "requirement of the subchapter," provides that

if, under a creditor's standard of creditworthiness, the personal liability of an additional party is necessary to support the extension of credit requested, a creditor may request a cosigner, guarantor, or the like. The applicant's spouse may serve as an additional party, but the creditor shall not require that the spouse be the additional party.

The term, "applicant," for purposes of § 202.7(d)(5),

means any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit.... [T]he term includes guarantors, sureties, endorsers and similar parties.

12 C.F.R. § 202.2(e). " 'Contractually liable' means expressly obligated to repay all debts arising on an account by reason of an agreement to that effect." 12 C.F.R. § 202.2(i).

C & S and Coleman argue that because Ford is not contractually liable on the promissory note to repay the debt, he is not an "aggrieved party" within the meaning of ECOA. The Court disagrees. Under the terms of the Deed to Secure Debt, the promissory note can be satisfied from Ford's property. Using the language of the regulations, Ford may become "contractually liable regarding an extension of

---

1. Counts I and VII are not discussed individually because "Count I" recites the basic facts and "Count VII" is the prayer for relief.

credit" in that he may be "expressly obligated to repay all debts arising on an account by reason of an agreement (the deed) to that effect."

■ C & S and Coleman argue next that even if Ford is an aggrieved party, his claim is not ripe because the bank is not currently foreclosing on his property. They maintain that his claim may never be ripe in the event that the note is paid or the amount is satisfied from assets other than Ford's property. Ford responds that he has been injured in that the encumbrance of his property makes it difficult for him to obtain credit.

The Court finds Ford's claim is ripe for review because, under § 1691e(a), "actual damages" are not limited to monetary losses, by "may include ... injury to credit reputation and mental anguish, humiliation or embarrassment." *Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 148 (5th Cir.1983); *Anderson v. United Finance Co.*, 666 F.2d 1274, 1277 (9th Cir. 1982). Count II will not be dismissed.

### Count III—Regulation Z of the Truth in Lending Act

■ In Count III, Ford alleges that C & S and Coleman violated 12 C.F.R. § 226.23 of Regulation Z of the Truth in Lending Act (TILA) by not notifying him of his right to rescind. Defendants respond that Ford had no right to rescind because the loan was made to cover an overdraft in the escrow account, which is a business purpose and thus exempted from the regulation. Ford replies that a factual dispute exists because he claims he granted the security interest for the personal purpose of avoiding the criminal prosecution of his wife Vickie.

Title 12 C.F.R. Part 226 requires creditors in certain types of transactions to make specified disclosures to borrowers. Section 226.23(a)(1) provides that "a consumer whose ownership interest in his principal dwelling is or will be subject to a security interest, shall have the right to rescind the transaction." Further, "[i]n a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind." 12 C.F.R. § 226.23(b). Credit extensions that are primarily for a business purpose are exempt from the requirements of Part 226. 12 C.F.R. § 226.3(a)(1); 12 C.F.R. Part 226, Supp. I at 221, 284.[2]

■ The Court finds that Ford's allegation of a personal purpose withstands the defendants' motions relative to the purpose of the loan. However, there is some question as to whether Ford is a "consumer" within the meaning of the regulation because Ford has not alleged that the security interest was in his principal dwelling. *See* 12 C.F.R. § 226.2(11) ("for purposes of rescission under §§ 226.15 and 226.23, [consumer] includes a natural person in whose principal dwelling a security interest is or will be retained or acquired, if that person's ownership interest in the dwelling is or will be subject to the security interest.") Consequently, the Court will dismiss Count III, but will give Ford leave to amend his complaint to allege that the property in question is his principal dwelling.

### Count IV—Racketeer Influenced and Corrupt Organizations Act

In Count IV, Ford alleges a violation of 18 U.S.C. § 1962, *et seq.*, the Racketeer Influenced and Corrupt Organizations Act (RICO), due to threats made to him and his wife on August 12, 1988. Specifically, Ford alleges that defendants threatened that

if he did not execute a deed to secure debt on his farm, the F.B.I. would be notified, Vickie Ford would go to jail, and William Geary Ford would have to prove to the F.B.I. where all of the equity in his farm came from, and if he failed to prove this fact, the farm would be forfeited.

---

**2.** Initially, § 226.23 explicitly exempted "credit transactions involving extensions of credit for business or commercial purposes." *Sherrill v. Verde Capital Corp.*, 719 F.2d 364, 366 (11th Cir.1983). Although the current § 226.23 omits that language, § 226.3(a)(1) provides that "[t]his regulation does not apply to the following ...

an extension of credit primarily for a business [or] commercial purpose." Further, the Official Staff Interpretation of § 226.23 states that "the right of rescission does not apply to a business purpose loan, even though the loan is secured by the customer's principal dwelling." 12 C.F. R. Part 226, Supp. I at 284 (1988).

Complaint, ¶ 23. On the same date, Ford alleges, defendants made extortionate threats to his wife, Vickie Ford, that "if she did not deposit $38,000 with the bank and execute various deeds to secure debt, the F.B.I. would be notified and she would go to jail." Complaint, ¶ 24.

"To state a claim under RICO, a plaintiff must allege each of the following four elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Durham v. Business Management Associates*, 847 F.2d 1505, 1511 (11th Cir. 1988), *quoting, Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Defendants argue that Ford has not stated a RICO violation because he has not alleged "racketeering acts," nor a "pattern of racketeering activity," nor that he suffered an injury as a result.

■ The Court finds, initially, that Ford has alleged racketeering acts. "Racketeering activity," among other things, includes any act indictable under 18 U.S.C. § 894 for extortion of credit transactions. 18 U.S.C. § 1961(1). "Extortion" involves "the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of any person." 18 U.S.C. § 891(7).

The Court agrees with Ford, that he has alleged that defendants engaged in blackmail, a criminal means of threatening to inform against any violation of federal law in order to demand or receive "money or other valuable thing." 18 U.S.C. § 873. The question therefore becomes whether, by alleging these two racketeering acts, Ford has alleged a "pattern of racketeering activity."

"[T]o establish a pattern there must be a showing of more than one racketeering activity and the threat of continuing activity." *Bank of America National Trust & Savings Assoc. v. Touche Ross & Co.*, 782 F.2d 966, 971 (11th Cir.1986). "[C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id. quoting, Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14.

"Acts that are part of the same scheme or transaction can qualify as distinct predicate acts." *Id.* Whether the predicate acts are similar such that they form a "pattern" is a factual issue. *Durham*, 847 F.2d at 1512.

■ Some district courts in this circuit have held that "continuity requires both temporal separation and relatedness" between the predicate acts. *See, e.g., Mills v. Fitzgerald*, 668 F.Supp. 1554, 1560 (N.D. Ga.1987); *Sheftelman v. Jones*, 636 F.Supp. 263, 268 (N.D.Ga.1986). These courts have reasoned that, under *Touche Ross*, distinct predicate acts can arise under a single scheme or transaction, but that RICO requires more than predicate acts: it requires a pattern. These courts have therefore deduced that although distinct predicate acts may arise from a single scheme or transaction, a pattern is not shown unless there is temporal separation between the acts.

The Court has read *Touche Ross* carefully, as well as other binding cases, and finds that a pattern of racketeering activity *can* be shown by acts that are not separated temporally. The *Touche Ross* Court *rejected* the argument that "predicate acts must occur in different criminal episodes in order to satisfy the pattern requirement." In so deciding, the Court quoted the following language from *United States v. Watchmaker*, 761 F.2d 1459 (11th Cir.1985), *cert. denied*, 474 U.S. 1100–01, 106 S.Ct. 880–81, 88 L.Ed.2d 917 (1986):

> The standard which has been applied in this Circuit is whether each act constitutes 'a separate violation of the [state or federal] statute' governing the conduct in question.... If distinct statutory violations are found, the predicate acts will be considered to be distinct irrespective of the circumstances under which they arose.

*Touche Ross*, 782 F.2d at 971 *quoting, Watchmaker*, 761 F.2d at 1475 (brackets in original).

**1126**

In *Watchmaker,* the Eleventh Circuit had "rejected the claim that predicate acts which are proximate in time do not demonstrate the 'continuity' necessary for proof of a RICO offense." Id. at 1475. *Watchmaker,* in turn, had relied on *United States v. Phillips,* 664 F.2d 971, 1038 (5th Cir. Unit B Dec.1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354, 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982), where the Court wrote: "We have repeatedly stated that the predicate acts necessary for finding a pattern of racketeering must be two separate crimes.... These crimes need not, however, be in the context of independent schemes or objectives."

█ Given these explicit passages, the Court concludes that Ford's allegations are sufficient to state a pattern of racketeering activity. He has alleged two distinct extortionate threats on the part of defendants, one against himself and one against his wife, both occurring on the same day. The predicate acts for showing a pattern under RICO can occur at or about the same time. *See Touche Ross,* 782 F.2d at 971; *Watchmaker,* 761 F.2d at 1475; *Phillips,* 664 F.2d at 1038. Although it may be difficult to establish a "pattern" under these circumstances, at a minimum, Ford's allegations are sufficient to state a claim for relief. *See Durham,* 847 F.2d at 1512 (whether the predicate acts are similar such that they form a pattern is a factual issue).

█ Defendants contend that even if the complaint states a RICO violation, Ford lacks standing because any injury he may have suffered did not flow from the violation. Specifically, they argue, the alleged extortion resulted in the extension of credit to the law firm and *not* to Ford, and therefore he was not injured by any RICO violation. The Court disagrees. As stated above, the alleged racketeering activity was the use of blackmail to demand or receive "money or other valuable thing." 18 U.S.C. § 873. A security interest is a "valuable thing" that, allegedly, was demanded and received from Ford in violation of RICO.

Alternatively to dismissing the RICO claim, defendants move for a more definite statement. They note that the RICO statute contains subdivisions that define distinct prohibited activities, and Ford does not specify the subdivision under which he wishes to proceed. Ford has not responded to this argument.

█ Under Federal Rule of Civil Procedure 12(e), a defendant may move for a more definite statement if the complaint is so vague or ambiguous that the defendant cannot reasonably be required to frame his answer. The Supreme Court has paraphrased the RICO subdivisions as follows:

Section 1962, entitled "Prohibited Activities," outlaws the use of income derived from a "pattern of racketeering activity" to acquire an interest in or establish an enterprise engaged in or affecting interstate commerce; the acquisition or maintenance of any interest in an enterprise "through" a pattern of racketeering activity; conducting or participating in the conduct of an enterprise through a pattern of racketeering activity; and conspiring to violate any of these provisions.

*Sedima,* 473 U.S. at 482–83, 105 S.Ct. at 3277–78. Ford's complaint states that the defendants conspired to extort things of value, in violation of § 1962. Although the complaint does not specify a subdivision of § 1962, the only reasonable interpretation is that defendants are charged with conspiring to conduct or participate in the conduct of an enterprise through a pattern of racketeering activity. A more definite statement of the RICO claim is not needed for defendants to frame their answers.

*Counts V and VI—State Law Claims*

█ Defendants argue that if the federal question counts are dismissed, the Court should dismiss Counts V and VI, which allege violations of Georgia tort and contract law in connection with the events of August 12. Because federal question claims remain in the action, the Court will exercise pendent jurisdiction over these related state law claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

In the alternative that the complaint is not dismissed, defendants move for a more definite statement of Count V, wherein Ford claims that Coleman, Tilley and Soulis falsely told him that Tilley and Soulis "had already pledged every asset that each held to collaterize (sic) the note," with the fraudulent intent to induce him to execute the security deed. Defendants maintain the fraud allegations are too cursory and Ford alleges no injury. Ford has not responded to this contention.

A complaint must give the defendants fair notice of the basis of the plaintiff's claim. Fed.R.Civ.P. 8; *Caster v. Hennessey*, 781 F.2d 1569, 1570 (11th Cir.1986). Further,

> [i]n all averments of fraud, ... the circumstances constituting fraud ... shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally.

Fed.R.Civ.P. 9(b). Read together, these rules provide that "the plaintiff must apprise the defendant fairly of the charge. Rule 9(b) does not require nor make legitimate the pleading of detailed evidentiary matter, but allegations of fraud which are vague, speculative, or conclusory will not be sufficient." 2A J. Moore & J. Lucas, *Moore's Federal Practice*, ¶ 9.03[1] at 9–36—9–38 and ¶ 9.03[2] (2d ed. 1987).

The Court finds that Count V describes the circumstances constituting fraud with sufficient particularity to apprise the defendants of the basis of the claim. Contrary to defendants' position, Ford does allege injury, to-wit the granting of a security interest in his property. The defendants shall respond to that claim as alleged.

ACCORDINGLY, defendants' motions to dismiss or for judgment on the pleadings or for a more definite statement are DENIED as to Counts II, IV, V and VI and GRANTED as to Count III. Further, Plaintiff Ford shall have twenty (20) days to amend Count III as discussed in this order.

IT IS SO ORDERED.