847 F.2d 1505
 Blue Sky L. Rep. P 72,758, Fed. Sec. L. Rep. P 93,808,
11 Fed.R.Serv.3d 713, RICO Bus.Disp.Guide 6976
 Richard DURHAM, et al., Plaintiffs-Appellees,
v.
BUSINESS MANAGEMENT ASSOCIATES, et al., Defendants,
Somers & Altenbach, Defendant-Appellant.
Richard DURHAM; Merrill R. Barron; Peter S. Verrill;
Khalid L. Khan; Donald J. Gale; Phillip Gilchrist; Wray
A. Hammer; Jesse D. Hester; Mamoun R. Pacha; Richard G.
O'Leary; Samuel Staggers, Jr.; Maurice F. Mc Carthy, Jr.;
Robert E. Hallett; James B. Threlkel; Wade Faulkner;
Shailesph P. Upadhyay; Mohammed A. Mohiuddin and Timothy L.
Eakes, Plaintiffs-Appellees,
v.
BUSINESS MANAGEMENT ASSOCIATES; Executive Counsel, Inc.;
Robert M. Fulmer; Robert J. Underwood; Underwood
Financial Planning, Inc., and William B.
Aylor, Defendants-Appellants,
McGraw-Hill Information Systems Company, et al., Defendants.
Richard DURHAM; Merrill R. Barron; Peter S. Verrill;
Khalid L. Khan; Donald J. Gale; Phillip Gilchrist; Wray
A. Hammer; Jesse D. Hester; Mamoun R. Pacha; Richard G.
O'Leary; Samuel Staggers, Jr.; Maurice F. Mc Carthy, Jr.;
Robert E. Hallett; James B. Threlkel; Wade Faulkner;
Shailesph P. Upadhyay; Mohammed A. Mohiuddin and Timothy L.
Eakes, Plaintiffs-Appellees,
v.
BUSINESS MANAGEMENT ASSOCIATES; Executive Counsel, Inc.;
Robert M. Fulmer; Robert J. Underwood; Underwood
Financial Planning, Inc., and William B.
Aylor, Defendants,
McGraw-Hill Information Systems Company, Defendant-Appellant.
 Nos. 87-7453 to 87-7455.
 United States Court of Appeals,
Eleventh Circuit.
 June 23, 1988.
 
 Maynard, Cooper, Frierson & Gale, P.C., N. Lee Cooper, A. Inge Selden, III, Luther M. Dorr, Jr., Birmingham, Ala., for McGraw-Hill.
 Michael D. McKibben, H. Douglas Hinson, Bradley, Arant, Rose & White, Birmingham, Ala., for Underwood and Underwood Financial Planning.
 Steven F. Casey, Balch & Bingham, John F. Mandt, Stanley M. Brock, Birmingham, Ala., for Durham, et al.
 Crawford S. McGivaren, Jr., Cabaniss, Johnston, Gardner, Dumas & O'Neal, Sara Eugenia Akin, Inger M. Sjostrom, Birmingham, Ala., for Somers & Altenbach.
 G. Thomas Yearout, Brett N. Blackwood, Birmingham, Ala., for R.M. Fulmer and Executive Council.
 Corley, Moncus, Bynum & DeBuys, P.C., John F. DeBuys, Jr., E. Clayton Lowe, Jr., Birmingham, Ala., for Business Management and William Aylor.
 Appeals from the United States District Court for the Northern District of Alabama.
 Before VANCE, Circuit Judge, TUTTLE*, Senior Circuit Judge, and LYNNE**, Senior District Judge.
 VANCE, Circuit Judge:
 
 
 1
 In this complex securities fraud action appellants appeal from the district court's order denying their motion for summary judgment. We affirm.I.
 
 
 2
 Appellees initiated this action on September 10, 1986 by filing a complaint in the United States District Court for the Northern District of Alabama. Appellees sought to recover damages for alleged violations of federal securities law and state law. The district court dismissed the original complaint, but granted appellees leave to amend so that they could defeat a statute of limitations bar. Appellees timely filed an amended complaint on February 6, 1987.
 
 
 3
 The amended complaint contains claims identical to the claims in the original complaint and alleges additional facts in an attempt to avoid a statute of limitations bar. Appellees' claims are based on alleged violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b), sections 12(2) and 17(a) of the Securities Act of 1933, 15 U.S.C. Secs. 77l (2), 77q(a), sections 8-6-17, 8-6-19, and 6-5-100 through 6-5-104 of the Alabama Code, as well as common law claims of fraud, negligence and breach of fiduciary duty. The district court summarily dismissed with prejudice the claims under section 12(2), section 17(a) and Alabama Code sections 8-6-17 and 8-6-19.[1] The district court stated that it could not determine whether the statute of limitations barred the section 10(b), fraud and negligence claims as a matter of law or whether "the RICO claim(s) should be dismissed as a matter of law." Accordingly, the district court denied the motions for summary judgment.[2] Noting that its opinion "involves a controlling question of law as to which there is a substantial ground for difference of opinion," the district court certified the case for an interlocutory appeal pursuant to 28 U.S.C. Sec. 1292(b). This court subsequently granted appellants' petitions for interlocutory appeal.
 
 
 4
 The undisputed facts in this case are as follows: Business Management Associates ("BMA"), a limited partnership, was formed in 1981. The purpose of the partnership was to acquire and market a series of business management video cassettes. Appellants Executive Counsel, Inc. ("ECI") and Robert M. Fulmer, an officer of ECI, agreed to produce twenty master tapes for BMA's distribution. The master tapes, from which copies would be produced for sale to the business community, were to be the partnership's only assets.
 
 
 5
 In late 1981 appellees subscribed for units of limited partnership interest in BMA. As a part of the offering each investor received a Private Placement Memorandum which outlined the structure of the limited partnership. The Private Placement Memorandum contained an appraisal, prepared by appellant McGraw-Hill, of the value of the master tapes and a tax opinion, prepared by appellant Somers & Altenbach, which described the expected income tax consequences of the partnership's activities. The memorandum also explained that the limited partners would receive periodic financial information as required by the partnership agreement. Appellants Robert J. Underwood and Underwood Financial Planning, Inc. ("UFPI") acted as underwriters for the offering and thereafter represented the investors as information agents in connection with the investment.
 
 
 6
 The parties dispute the extent of communications received by appellees over the next two years. Appellants maintain that appellees were advised of the low sales volume during this period and point to a July 1983 memorandum which alerted investors to the disappointing number of sales. Appellees on the other hand, argue that they did not receive the tax information as asserted by appellants McGraw-Hill and Somers & Altenbach and that the July 1983 memorandum, while acknowledging that sales had been disappointing, did not indicate the complete failure of the partnership or its operation as a sham. In 1984 the IRS began to examine the 1981 and 1982 tax returns of the partnership. Appellees allege that in late October 1984 they initially became aware of possible adverse IRS action. Asserting that the partnership was a sham and that they were not alerted to the possibility of fraud until advised of the 1984 IRS action, appellees seek to recover damages for alleged violations of federal securities law and state common law.
 
 II.
 
 7
 Appellants argue that appellees' claims are time-barred and that the district court erroneously denied the motions for summary judgment. The statute of limitations for a section 10(b) action is the limitations period the forum state applies to the cause of action "which bears the closest resemblance" to the federal claim. Kennedy v. Tallant, 710 F.2d 711, 716 (11th Cir.1983); Diamond v. Lamotte, 709 F.2d 1419, 1421 (11th Cir.1983); White v. Sanders, 650 F.2d 627, 629 (5th Cir. Unit B 1981). But see In re Data Access Sys. Sec. Litig., 843 F.2d 1537 (3d Cir.1988) (in banc) (other provisions of the 1934 Securities Exchange Act are more analogous to section 10(b) actions, and the limitations period governing companion provisions of the Act should apply to section 10(b) actions). In this case, the district court properly applied Alabama's two-year statute of limitations applicable to actions for the fraudulent sale of securities.[3] See Ala.Code Sec. 8-6-19(e); Hunt v. American Bank & Trust Co., 783 F.2d 1011, 1013 (11th Cir.1986).
 
 
 8
 While state law governs the limitations period applicable to a section 10(b) action, federal law governs when the limitations period begins to run. Osterneck v. E.T. Barwick Indus., Inc., 825 F.2d 1521, 1535 (11th Cir.1987), petition for cert. filed sub nom., Osterneck v. Ernst & Whinney, 56 U.S.L.W. 3530 (U.S. Jan. 15, 1988) (No. 87-1201); Kennedy, 710 F.2d at 716; White, 650 F.2d at 630. Federal law provides that the statute of limitations for an action under section 10(b) begins to run when the plaintiff discovers, or in exercise of reasonable diligence should have discovered the alleged violations. Kennedy, 710 F.2d at 716; Diamond, 709 F.2d at 1420 n. 1; see also Azalea Meats, Inc. v. Muscat, 386 F.2d 5, 10 (5th Cir.1967). In other words "what matters is not when the information was actually known, but rather when in the exercise of due diligence it should have been known." Hunt, 783 F.2d 1011, 1014.
 
 
 9
 A similar standard applies to the commencement of the limitations period for fraud and negligence actions under Alabama law. In fraud actions Alabama Code section 6-2-3 tolls the limitations period[4] until the "fraud is readily discoverable or the potential plaintiff is on notice that a fraud may have been perpetrated." Lampliter Dinner Theater v. Liberty Mut. Ins. Co., 792 F.2d 1036, 1043 (11th Cir.1986). Alabama courts have applied this tolling provision in other tort actions not arising in fraud. See Tonsmeire v. Tonsmeire, 285 Ala. 454, 233 So.2d 465, 467 (1970). Like the federal due diligence standard, Alabama law provides that the "fraud is 'deemed to have been discovered ... at the time of the discovery of facts which would provoke inquiry by a person of ordinary prudence and which, if followed up, would have led to the discovery of the fraud.' " Ramp Operations, Inc. v. Reliance Ins. Co., 805 F.2d 1552, 1554-55 (11th Cir.1986) (quoting Papastefan v. B & L Constr. Co., 385 So.2d 966, 967 (Ala.1980)).
 
 
 10
 Appellants argue that the amended complaint is "virtually devoid" of any showing of due diligence. They point out that the partnership agreement required the partnership to provide each limited partner with periodic, detailed financial information and permitted any limited partner to inspect the partnership's books at any reasonable time. Appellants maintain that although appellees allege that they did not receive any financial information during a two year period, appellees failed to allege that they requested or were refused access to this information. Appellants also argue that in a July 1983 memorandum received by appellees, appellant Underwood informed limited partners of the "dismal" sales record. Appellants maintain that appellees had ample "storm warnings" prior to September 10, 1984, two years before this action was filed, to alert them to "serious financial problems with their investment." General Builders Supply Co. v. River Hill Coal Venture, 796 F.2d 8 (1st Cir.1986).[5]
 
 
 11
 Appellees contend that they did not discover the fraud until late 1984 when they received an IRS report indicating that the partnership was a sham. They maintain that the amended complaint contains several facts which show that a reasonable investor would not have discovered the fraud more than two years prior to the filing of this action.[6] Appellees also argue that they should be held to a lower standard of due diligence due to the fiduciary relationship between the limited partners and the general partner. See Sperry v. Barggren, 523 F.2d 708, 711 (7th Cir.1975).
 
 
 12
 The question of due diligence is the key issue in determining the appropriateness of summary judgment in this case. Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). When considering due diligence on a motion for summary judgment, the court must recognize that the issue is often a question of fact. "The concept of due diligence is not imprisoned within the frame of a rigid standard; it is protean in application." Azalea Meats, 386 F.2d at 9. As the Fifth Circuit stated: "Inevitably the factual issue of due diligence involves, to some extent at least, the state of mind of the person whose conduct is to be measured against this test and it is simply not feasible to resolve such an issue on motion for summary judgment." Id. at 10; see Kennedy, 710 F.2d at 716 ("questions of notice and due diligence are particularly suited for a jury's consideration"). Thus, summary judgment is appropriate only where no reasonable jury could differ as to whether the plaintiffs exercised due diligence in discovering the fraud.
 
 
 13
 The central dispute in this case is whether appellees satisfied the due diligence requirement in light of the information they received. The parties disagree about how a reasonable person would have reacted to the alleged lack of communication and what inferences could have been drawn from the July 1983 memorandum. The dispute concerning the receipt of partnership sales revenues and the interpretation of the July 1983 memorandum creates a genuine issue of material fact as to appellees' due diligence. Accordingly, the district court properly denied the motion for summary judgment.[7]
 
 III.
 
 14
 Appellant Aylor asserts that appellees may not maintain an action against him under section 10(b) and Rule 10b-5 for his purported involvement with the alleged fraudulent issuance of BMA limited partnership interests. Aylor replaced the original general partner, Steve Davis, on December 2, 1981. Shortly thereafter the limited partners were given an opportunity to rescind their purchase. The rescission offer extended the original offering until December 31, 1981. At the time of the rescission offer all but two appellees had already subscribed for an interest in the partnership. In the amended complaint appellees allege that Aylor's assumption of the general partner position "was a substantial factor in each plaintiff's decision not to rescind" and that Aylor became responsible for the completeness of the Private Placement Memorandum. The amended complaint also alleges that the rescission offer was misleading because it did not explain fully the reason for Davis' resignation as general partner.
 
 
 15
 Only purchasers and sellers of securities may maintain an action under Rule 10b-5. Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 731, 95 S.Ct. 1917, 1923, 44 L.Ed.2d 539 (1975); see Birnbaum v. Newport Steel Corp., 193 F.2d 461, 463 (2d Cir.) (rule 10b-5 actions are limited to "actual purchasers and sellers"), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). We find that the facts are not sufficiently developed for determining whether appellees satisfy this rule. Although appellees stated during oral argument that appellees made no payment for their interests until after the rescission offer, the Private Placement Memorandum and the rescission offer suggest that appellees made an initial payment at the time of subscription.[8] If the sale had been completed before the change in general partners, then Aylor is not subject to liability. If, however, the sale was not completed at the time of the rescission offer, Aylor remains subject to potential liability. Since the facts as developed do not demonstrate clearly and without dispute that any fraud committed with respect to the rescission offer was committed after the purchase was finalized, the district court properly denied summary judgment.IV.
 
 
 16
 Appellees' amended complaint also contains a claim for an alleged violation of the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Secs. 1961-68, by four of the appellants.[9] Appellees maintain that the limited partnership investment scheme and a "Free Enterprise Scheme" form the basis of their RICO claim. To state a claim under RICO a plaintiff must allege each of the following four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). RICO defines racketeering activity as any act indictable under 18 U.S.C. Secs. 1341 and 1343, the mail and wire fraud provisions, or "any offense involving ... fraud in the sale of securities." 18 U.S.C. Sec. 1961(1). To establish a pattern of racketeering activity there must be at least two predicate acts of racketeering activity. Id. Sec. 1961(5). Although two predicate acts are a prerequisite to establishing a pattern of racketeering activity, they are not by themselves sufficient. Sedima, 105 S.Ct. at 3285 n. 14. Interpreting the Sedima language, this court has stated that "to establish a pattern there must be a showing of more than one racketeering activity and the threat of continuing activity." Bank of America Nat'l Trust & Sav. Ass'n. v. Touche Ross & Co., 782 F.2d 966, 971 (11th Cir.1986).
 
 
 17
 To establish the second predicate act, appellees allege in the amended complaint that the RICO appellants promoted and sold subscriptions for interests in a venture named the "Free Enterprise Program Investment."[10] The amended complaint alleges that the venture was structured in the following manner: Investors subscribed for units of interest in the venture, which produced a cassette library. The cassette library consisted of five video cassette tapes prepared by appellants ECI and Fulmer. Upon payment of a purchase price and an investment advisory fee, investors were issued a certificate of interest in the cassette library. Investors were advised that they could either sell the cassette tapes or "consider the idea of donating the assets to charity." The RICO appellants provided information on how to sell the tapes and the tax benefits associated with a charitable contribution.
 
 
 18
 The RICO appellants argue that the Free Enterprise Scheme may not be used as one of the requisite predicate acts. They contend that the amended complaint does not adequately allege a RICO violation because the amended complaint contains only conclusory allegations of the venture's use of the mails.[11] Relying on Doxie v. Ford Motor Credit Co., 603 F.Supp. 624, 627-28 (S.D.Ga.1984), appellants maintain that Rule 9(b) of the Federal Rules of Civil Procedure requires fraud to be pleaded with particularity and that the amended complaint fails to plead mail fraud with the required particularity.
 
 
 19
 The particularity rule serves an important purpose in fraud actions by alerting defendants to the "precise misconduct with which they are charged" and protecting defendants "against spurious charges of immoral and fraudulent behavior." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir.1984), cert. denied, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985). The application of the rule, however, must not abrogate the concept of notice pleading. Friedlander v. Nims, 755 F.2d 810, 813 n. 3 (11th Cir.1985); see also Howell Petroleum Corp. v. Weaver, 780 F.2d 1198, 1199 (5th Cir.1986). Allegations of date, time or place satisfy the Rule 9(b) requirement that the circumstances of the alleged fraud must be pleaded with particularity, but alternative means are also available to satisfy the rule. Seville, 742 F.2d at 791; Shared Network Technologies, Inc. v. Taylor, 669 F.Supp. 422, 429 (N.D.Ga.1987). In addition to the allegations in the amended complaint appellees also submitted an affidavit by appellee Eakes to show that appellants corresponded by mail with the Free Enterprise Scheme investors.[12] We believe that the allegations contained in the amended complaint and the affidavit before the district court on the motion for summary judgment satisfy the requirements of Rule 9(b).[13]
 
 
 20
 Appellants also argue that appellees failed to establish a pattern of racketeering because they failed to allege the requisite "threat of continuing activity." See Touche Ross & Co., 782 F.2d at 971. They note that the two alleged schemes were independent, isolated events and "strikingly dissimilar." We disagree. In an attempt to better define the pattern requirement the Supreme Court quoted language from another provision of the RICO Act defining "pattern" as follows: "conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Sedima, 105 S.Ct. 3275, 3285 n. 14. Although the two schemes in this action involved different investors, the acts are sufficiently similar to withstand a motion for summary judgment. The use of business instructional video cassette tapes, the alleged promises of tax benefits and alleged inflated appraisals which led to IRS denial of tax benefits create a degree of similarity between the two schemes. While we recognize the various facts asserted by appellants distinguishing the schemes, these contentions illustrate that there is an issue of material fact as to the similarity of the two predicate acts. The district court therefore properly denied the motion for summary judgment.
 
 V.
 
 21
 For the foregoing reasons, we affirm the district court's order denying appellants' motion for summary judgment.
 
 
 22
 AFFIRMED.
 
 
 
 *
 See Rule 34-2, Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 **
 Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation
 
 
 [1]
 Appellees do not contend that the district court improperly dismissed these claims
 
 
 [2]
 Since affidavits and other supporting materials were presented to the court, the district court treated the appellants' motions to dismiss as motions for summary judgment
 
 
 [3]
 The parties agree that if the information concerning the alleged Sec. 10(b) violation was not discovered or reasonably discoverable by September 10, 1984 then the complaint was timely
 
 
 [4]
 A recent statutory provision, Ala.Code Sec. 6-2-38, extends the limitations period to two years for tort actions. Appellants allege that the statute does not apply retroactively, and that the previous one-year statute of limitations should apply to the common law fraud and negligence claims. We disagree. When a new statute of limitations is enacted before a cause of action is barred by the previous statute of limitations, the statute in effect at the time the action is commenced applies. Tyson v. Johns-Manville Sales Corp., 399 So.2d 263, 269 (Ala.1981). Accordingly, the question of which limitations period controls will depend on when the appellees discovered or should have discovered the alleged fraud
 
 
 [5]
 Appellants argue that the facts in General Builders are nearly identical to the facts in this case. In General Builders the First Circuit held that the investors in a coal mining venture had adequate "inquiry notice" before November 15, 1980, three years before the action was filed, and that the investors' action thus was barred by the statute of limitations. 796 F.2d at 13-14. Appellants' reliance on General Builders is misplaced. The plaintiffs in General Builders were joint venturers who, according to the court, had "a unique opportunity to adequately investigate the true status of their investments." Id. at 13. This case, in contrast, involves limited partners who, due to the organizational structure, have a very limited role in the venture. Additionally, the First Circuit identified two specific, undisputed facts which provided ample warning that the coal investment faced serious economic problems. Id. The controversy surrounding the facts in this case, however, prevents this court from drawing any legal conclusions with respect to the amount of information available to appellants
 
 
 [6]
 Appellees argue that the following facts support this allegation:
 (1) the Investors were passive investors in the Partnership who were legally entitled and indeed required to refrain from active participation in or supervision of the partnership's day to day activities;
 (2) the Investors reasonably relied on advice concerning their investment from their SEC-registered investment advisor and the Partnership's attorneys from 1981 to 1986, and reasonably relied on such persons to monitor the status of their investment and protect their interests;
 (3) the Investors were unaware of the true nature of the Partnership's marketing activity and sales performance and in fact, were led to believe meaningful efforts at marketing were taking place;
 (4) the Investors understood that the Partnership's business was in the start-up phase and
 (5) until they learned of possible adverse IRS action the Investors were unaware of the facts found by IRS ... and thus had no reason to believe they had been defrauded.
 
 
 [7]
 Appellees alternatively allege that appellants concealed the fraudulent character of the scheme. They contend that the allegations of fraudulent concealment are sufficient to survive summary judgment. Appellees point to several representations made by appellants before and after September 10, 1984 which they view as attempts to conceal that the partnership and offering were a sham. Appellants maintain that the 1981 Private Placement Memorandum warned appellees of possible adverse IRS action and therefore appellees may not maintain that "profitability and tax consequences of their investment in BMA were concealed from them." We view the issue of fraudulent concealment as irrelevant at this point due to our belief that the issue of due diligence is an issue for the trier of fact. We note, however, that the question of whether appellees in the exercise of due diligence should have discovered the alleged violations prior to September 10, 1984, requires the trier of fact to consider the doctrine of fraudulent concealment as well as the presence of a fiduciary relationship. See Azalea Meats, 386 F.2d at 9; Hupp v. Gray, 500 F.2d 993, 997 (7th Cir.1974) (court should consider the existence of a fiduciary relationship, the nature of the alleged fraud, one's opportunity to discover the fraud and the subsequent actions of the defendant in determining whether the plaintiff exercised due diligence)
 
 
 [8]
 The rescission offer provided for a refund of the purchase price paid by the limited partner plus interest from the date of payment
 
 
 [9]
 The RICO appellants include ECI, Fulmer, Underwood and UFPI
 
 
 [10]
 Only appellee Thomas A. Eakes participated in the Free Enterprise Scheme
 
 
 [11]
 The amended complaint contains the following allegation which appellants characterize as conclusory:
 Correspondence and other communications concerning the Free Enterprise Scheme took place through means or instrumentalities of interstate commerce, including without limitation, the mails.
 ....
 The unlawful actions comprising the Free Enterprise Scheme ... constituted 'racketeering activity' as defined in 18 U.S.C. Sec. 1961 in that such actions constituted fraud in the sale of securities and mail fraud under 18 U.S.C. Sec. 1341.
 
 
 [12]
 The Eakes affidavit states:
 I received a Confidential Offering Circular and certain related documents through the mails by letter dated December 31, 1979, from Terrance M. Gill, one of the promoters of the Free Enterprise Program .... From time to time during the next several years, I received correspondence related to this investment through the mail from Mr. Gill and Robert B. Fulmer, another promoter of the program.... I also forwarded signed copies ... through the mails ... and received Mr. Underwood's invoice through the mail.
 
 
 [13]
 The RICO appellants also argue that the Free Enterprise Scheme may not be used as one of the predicate acts because it does not involve the sale of securities. While it is possible that the Free Enterprise Scheme may be viewed as a sale of securities, we do not address this issue due to our conclusion that the amended complaint contains adequate allegations of mail fraud