Charles D. MEDALIE, and Janet Medalie, Plaintiffs,

v.

FSC SECURITIES CORPORATION, Defendant.

No. 98–3183–CIV.

United States District Court, S.D. Florida.

Feb. 1, 2000.

Robert B. Miller, Bedzow Korn Brown, Hallendale, FL, for Plaintiffs.

James Kaplan, Wilson Elser Moskowitz, Miami, FL, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND GRANTING DEFENDANT'S MOTION FOR A MORE DEFINITE STATEMENT

GOLD, District Judge.

**THIS CAUSE** is before the court upon defendant FSC Securities Corporation's motion to dismiss (DE # 16–1, 16–2). Plaintiffs Charles D. Medalie and Janet Medalie were solicited from late 1984 until February 1985 by George Bliss, a representative of FSC, to purchase investments in limited partnerships. Bliss visited George Medalie in school, where he worked, and later both plaintiffs at their home. Plaintiffs allege that Bliss represented the investments would be safe, low risk, have a higher rate of return than money markets or certificates of deposit, and that the investments would be suitable for teachers such as the Medalies. Based on Bliss's representations, the Medalies made five limited partnership purchases on February 5, 1985 and two purchases on February 12, 1987. Plaintiffs' total investment amounted to $157,575.00. Plaintiffs allege that after the purchases, neither Bliss nor FSC reported to them the true value or performance of their investments and represented to them that the investments were "fine" and "doing great." Plaintiffs continued to hold these investments "to their financial detriment."

Plaintiffs filed a four count complaint against the defendant alleging violation of § 517.301 of the Florida Securities and Investor Protection Act (Count I), breach of fiduciary duty (Count II), fraud in the inducement (Count III), and breach of contract (Count IV). Plaintiffs' complaint was originally filed in the Circuit Court for the Eleventh Judicial Circuit in and for Miami–Dade County, Florida. The case was timely removed to this court based on the court's diversity jurisdiction. Plaintiffs are citizens and residents of New York and defendant is a Georgia corporation, with its principal place of business in Georgia. The solicitations in this case took place in Waverly, New York. FSC contractually consented to venue, personal jurisdiction, and subject matter jurisdiction in Dade County, Florida. By arguing their motions based on Florida law, the parties have stipulated that Florida law applies in this case.[1] Neither party raised a choice-of-law or conflicts of law problem. Defendant now moves to dismiss all counts, and if count IV for breach of contract, is not

1. Other than the consent to jurisdiction in Miami–Dade County by the defendant, this case seems to have little connection to the State of Florida or Miami–Dade County. The parties have, however, apparently agreed that Florida law shall govern this case. Because the parties did not raise a conflict of laws issue in the their motions and argued their motions based only on Florida law, the law of the forum will govern, absent any facts justifying the application of some other state's law. *Cavic v. Grand Bahama Development Co.*, 701 F.2d 879, 882 (11th Cir.1983) ("Because the parties did not raise any conflict of laws issue in the district court and do not raise it on appeal, under applicable conflict of laws principles the law of the forum ( [Florida] ) would govern the substantive issues due to the absence of facts justifying the application of the law of some other jurisdiction."); *see also American Fuel Corporation v. Utah Energy Development Co.*, 122 F.3d 130, 134 (2d Cir. 1997) ("[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry."). Because the parties have acquiesced to application of Florida law in this case, the parties may not later argue that another jurisdiction's law should apply. *See Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, 60 F.3d 734, 739 n. 15 (11th Cir.1995).

dismissed, defendant moves for a more definite statement on count IV.

## I. Standard of Review for a Motion to Dismiss under Rule 12(b)(6)

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir.1994) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir.1994). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. *See Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir.1985) (citation omitted); *Jackam v. Hospital Corp. of America Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir.1986). "[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the complaint should not be dismissed on grounds that it fails to state a claim upon which relief can be granted. *Sea Vessel, Inc. v. Reyes*, 23 F.3d 345, 347 (11th Cir.1994) (citation omitted). Nevertheless, to survive a motion to dismiss, a plaintiff must do more than merely "label" his claims. *Blumel v. Mylander*, 919 F.Supp. 423, 425 (M.D.Fla.1996). Moreover, when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir.1993).

## II. Count I Securities Fraud—Violation of § 517.301, Florida Statutes

■ Count I of plaintiff's complaint alleges a violation of § 517.301, Florida Stat-utes. Defendant moves to dismiss based on the argument that Count I is barred by the statute of limitations. The statute of limitations applicable to Chapter 517 is set forth in § 95.11(4)(e), Florida Statutes, which provides:

Actions other than for recovery of real property shall be commenced as follows:

. . .

**4) Within two years.—**

. . .

e) An action founded upon a violation of any provision of chapter 517, with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence, but not more than 5 years from the date such violation occurred. . . .

This statute has been held to bar any action for violation of Chapter 517, Florida Statutes, commenced after the expiration of five years from the date of the violation regardless of whether the facts giving rise to the cause of action were known by the plaintiff. In *Wilder v. Meyer*, 779 F.Supp. 164, 167–68 (S.D.Fla.1991), the court held that fraudulent concealment would not serve to extend the five-year bar provided by the statute of limitations in § 95.11(4)(e) in a § 517.301 action. The *Wilder* court relied on the Eleventh Circuit's holding in *Cook v. Deltona Corp.*, 753 F.2d 1552, 1562 (11th Cir.1985):

where the statute clearly provides for a tolling period for a fraudulent concealment, and then includes a secondary date which "in no event" can be surmounted, there is good basis for belief that the latter date was intended as an absolute barrier to the filing of suit.

In *Cook*, the court was interpreting language in the Interstate Land Sales Full Disclosure Act ("the Act"), 15 U.S.C. § 1701, et seq. The pre–1979 § 1711 of the Act, providing the limitations period, contains a similar bifurcated limitations scheme as is found in § 95.11(4)(e). The *Cook* court read the statute as manifesting a legislative intent to avoid equitable toll-

ing for the secondary limitations period, while retaining the possibility of equitable tolling for the shorter primary limitations period. *See id.* at 1562.

■ First, looking a the face of the complaint, plaintiffs allege that they did not discover the fraud committed against them until "mid–1996." Amend. Complaint at ¶¶ 25, 41. The original state court action was filed on December 9, 1998, over two years after "mid–1996." *See* Defendant's Notice of Removal at 1 and attached State Court Complaint. The question is therefore whether the complaint was filed less than "five years from the date such violation occurred." The answer to that question depends on when the violation is deemed to have occurred. If the violation is deemed to have occurred when the securities were actually purchased, then the complaint was filed beyond the five year limitations period and the claim is barred by § 95.11(4)(e). The Amended Complaint indicates that the securities purchases occurred on February 5, 1985 and on February 12, 1987. These purchases occurred more than 11 years before the complaint in this case was filed. *See* Amend. Complaint at ¶ 20. On the other hand, plaintiffs argue that the violation should be deemed to be a continuous tort that was fraudulently concealed by the defendant. In this case, plaintiffs argue, the defendant's ongoing fraudulent misrepresentations and violations of fiduciary duties would extend the limitations period beyond the date of the original purchase and place it within the five year limitations period of § 95.11(4)(e). The court is unpersuaded by plaintiffs' argument because ample case law suggests that the five year limit is an absolute bar which cannot be extended though equitable tolling, continuous torts, ongoing misrepresentations, or violations of fiduciary duties.[2] *See Wilder* and *Cook, supra.*

Moreover, the cases show that the cause of action accrues for purposes of the five year limitations period at the time the securities were purchased. *See Byrne v. Gulfstream First Bank & Trust Co. of Boca Raton,* 528 F.Supp. 692, 695 (S.D.Fla.1981) (determining for purposes of a Section 10(b) and Rule 10b–5 action applying the limitations period in Fla.Stat. § 95.11(4)(e) that the cause of action arose when the transaction transferring the securities at issue to the defendant was completed, and the action was therefore barred, even though the fraud was allegedly discovered within 2 years of the filing of the complaint, because 10 years had passed since the transaction was completed); *see also Armbrister v. Roland Int'l Corp.,* 667 F.Supp. 802, 823 (M.D.Fla.1987) ("The right of action provided arises when a sale is made in violation of the Chapter's [517] provisions. The 'violation,' then, that triggers the limitations period [of § 95.11(4)(e) ] occurs when the purchaser contracts to buy the security."); *Wilder, supra.* Accordingly, because the allegedly fraudulent conduct was discovered more than two years after the complaint was filed and because the securities were purchased more than 11 years before the complaint was filed, Count I is barred by the statute of limitations in § 95.11(4)(e) and is therefore dismissed.[3]

### III. Counts II and III—Breach of Fiduciary Duty and Fraud in the Inducement

#### A. The Economic Loss Rule

■ Florida's economic loss rule was originally enunciated by the Supreme Court of Florida in the cases of *Florida Power & Light Co. v. Westinghouse Elec.,* 510 So.2d 899 (Fla.1987) and *AFM Corp. v. Southern Bell,* 515 So.2d 180 (Fla.1987). The doctrine provides that contract principles are more appropriate than tort principles for resolving economic loss claims without accompanying physical injury or

---

2. Plaintiffs' cited authorities are inapposite because they do not specifically address the bifurcated limitations period and absolute bar contained in § 95.11(4)(e).

3. Because the court is dismissing Count I based on the statute of limitations defense, the court need not address defendant's alternative grounds for dismissal.

injury to property other than that which is the subject of the contract. Consequently, a party to a contract may not pursue a claim in tort for solely economic losses unless the party breaching the contract has committed a tort which is distinguishable from or independent of the breach of contract. *Strickland–Collins Constr. v. Barnett Bank of Naples*, 545 So.2d 476 (Fla. 2d DCA 1989); *Keys Jeep Eagle, Inc. v. Chrysler Corp.*, 897 F.Supp. 1437, 1443 (S.D.Fla.1995).

The economic loss rule is grounded on the basic difference between contract law—which protects expectations—and tort law—which is determined by the duty owed by all persons to others in society. *Casa Clara Condo. Ass'n v. Charley Toppino & Sons*, 620 So.2d 1244 (Fla.1993). Economic loss has been defined as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." *Id.* Economic losses "are 'disappointed economic expectations,' which are protected by contract, rather than tort law." *Casa Clara*, 620 So.2d at 1246 (quoting *Sensenbrenner v. Rust, Orling & Neale Architects, Inc.*, 236 Va. 419, 374 S.E.2d 55, 58 (1988)). For recovery in tort "there must be a showing of harm above and beyond disappointed expectations." *Id.* Consequently, when the alleged duty breached is derived from the contractual relationship it cannot form the basis for a separate and distinct tort. *Interstate Sec. Corp. v. Hayes Corp.*, 920 F.2d 769 (11th Cir.1991).

### B. Breach of Fiduciary Duty

### 1. Moransais—A New View of the Economic Loss Rule

Defendant moves to dismiss plaintiffs' breach of fiduciary duty claim based on the argument that the claim is barred by the economic loss rule. In *Hayes*, the Eleventh Circuit held that a claim for breach of

fiduciary duty is barred by the economic loss rule, stating that "we hold that if a fraud claim is foreclosed as a matter of Florida law under the *AFM* doctrine, a claim for breach of fiduciary duty must be prohibited as well." *Hayes*, 920 F.2d at 777. Significantly, the *Hayes* case, just as this case, involved an investor suing a securities broker for fraud. The 1991 *Hayes* decision would therefore appear to be dispositive of the issue, however, on July 1, 1999, the Florida Supreme Court issued a new pronouncement on the application of the economic loss rule in *Moransais v. Heathman*, 744 So.2d 973 (Fla.1999). In *Moransais*, the court held that "the economic loss rule does not bar a cause of action against a professional for his or her negligence even though the damages are purely economic in nature and the aggrieved party has entered into a contract with the professional's employer." 744 So.2d at 983–84. The court further held that "Florida recognizes a common law cause of action against professionals based on their acts of negligence despite the lack of a direct contract between the professional and the aggrieved party." *Id.*

In reaching its decision, the Florida Supreme Court engaged in a fundamental reassessment of how the economic loss rule has evolved in Florida and whether it has strayed from its original purpose. *See id.* at 980 ("Unfortunately, however, our subsequent holdings have appeared to expand the application of the rule beyond its principled origins and have contributed to application of the rule by trial and appellate courts to situations well beyond our original intent.") and *id.* at 980 ("We must acknowledge that our pronouncements on the rule have not always been clear and, accordingly, have been the subject of legitimate criticism and commentary."). The court concluded that the economic loss rule was being applied too broadly and was effectively extinguishing traditional tort causes of action.[4] Therefore, the scope of

---

4. Florida has been specifically criticized for using the economic loss rule to bar breach of fiduciary duty claims. *See, e.g.,* Amanda K.

Esquibel, *The Economic Loss Rule and Fiduciary Duty Claims: Nothing Stricter than the*

the economic loss rule should be narrowed to product liability actions and other similar contexts:

> Today, we again emphasize that by recognizing that the economic loss rule may have some genuine, but limited, value in our damages law, we never intended to bar well-established common law causes of action, such as those for neglect in providing professional services. Rather, the rule was primarily intended to limit actions in the product liability context, and its application should generally be limited to those contexts or situations where the policy considerations are substantially identical to those underlying the product liability-type analysis.

*Id.* at 983.

While the holding of this case was limited to professional malpractice, the court implied that other torts would also not be covered by the newly clarified economic loss rule. *See id.* ("The rule, in any case, should not be invoked to bar well-established causes of actions in tort, such as professional malpractice."). Shortly after the *Moransais* decision, the Third District Court of Appeal held that "the *Moransais* opinion makes it clear that the economic loss rule has not abolished the cause of action for breach of fiduciary duty, even if there is an underlying oral or written judgment on this issue." *First Equity Corp. of Florida, Inc. v. Watkins*, Nos. 98–851, 98–589, 1999 WL 542639 (Fla. 3d DCA July 28, 1999). The facts of *First Equity* are essentially the same as in this case: a securities broker introduced Watkins to an investment opportunity and entered into oral and written contracts. The investment ultimately failed and Watkins brought suit contending that First Equity had misrepresented material facts regarding the investment. *See id.* at * 1. Noting that breach of fiduciary duty is a "just such a well-established cause of action in tort" the *Moransais* court contemplated, *First Equity* held the cause of action was not barred by the economic loss rule.

*Morals of the Marketplace?,* 42 Vill.L.Rev.

The *First Equity* holding therefore appears to be in direct conflict with the Eleventh Circuit's holding in *Hayes.* The *First Equity* court recognized the conflict stating:

> We recognize that the United States Court of Appeals for the Eleventh Circuit has held that the Florida economic loss rule bars a breach of fiduciary claim. *See Interstate Securities Corp. v. Hayes Corp.*, 920 F.2d 769, 776–77 (11th Cir.1991). At the time of that decision, Florida law was not entirely clear. *See Moransais*, 24 Fla.L. Weekly at S311, [744 So.2d at 980] ("We must acknowledge that our pronouncements on the rule have not always been clear...."). After *Moransais, Interstate Securities* and its progeny cannot be regarded as good law on this point.

*Id.* at * 2 n. ***.

Before reaching the question of whether the court should apply *First Equity* instead of *Hayes,* the court must answer the question of under what circumstances it can depart from Eleventh Circuit precedent.

### 2. Departure from Eleventh Circuit Precedent to Respond to a Change in State Law

In cases controlled by state law, federal courts are bound to follow the decisions of the highest court of the state. *Huddleston v. Dwyer,* 322 U.S. 232, 64 S.Ct. 1015, 88 L.Ed. 1246 (1944). If the highest state court has not addressed the issue, federal courts should ascertain and apply state law as pronounced by intermediate state appellate courts. *Fidelity Union Trust Co. v. Field,* 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109 (1940), reh. den. 311 U.S. 730, 61 S.Ct. 438, 85 L.Ed. 475 and reh. den. 314 U.S. 709, 62 S.Ct. 118, 86 L.Ed. 565 (1941). Federal courts should view an intermediate state court's opinion as "indicia of the leanings of the state's highest court," and follow those "leanings," unless the federal court is con-

789, 802–821 (1997).

vinced that the state supreme court would reach a different conclusion. *Daigle v. Shell Oil Co.,* 972 F.2d 1527 (10th Cir. 1992). *See also West v. American Tel. & Tel. Co.,* 311 U.S. 223, 236–37, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940).

■ ] Looking to the Eleventh Circuit for guidance, the court appears to be bound to follow state court rulings on issues of state law, particularly where a state court specifically contradicts an earlier interpretation of state law by a federal court. *Nussbaum v. Mortgage Service America Co.,* 913 F.Supp. 1548, 1554 (S.D.Fla.1995) (citing *Roboserve, Ltd. v. Tom's Foods, Inc.,* 940 F.2d 1441, 1451 (11th Cir.1991)). The Eleventh Circuit is not alone in considering a more recent interpretation of state law by state courts to justify reconsideration of circuit precedent. *See also Jones–Hamilton v. Beazer Materials & Services,* 973 F.2d 688, 696 n. 4 (9th Cir.1992); *Derflinger v. Ford Motor Co.,* 866 F.2d 107, 110 (4th Cir.1989); *Broussard v. Southern Pac. Transp. Co.,* 665 F.2d 1387 (5th Cir. 1982); *Singletary v. Southeastern Freight Lines, Inc.,* 833 F.Supp. 917 (N.D.Ga.1993) ("a federal court should follow the latest appropriate decision at whatever point in the federal proceedings it comes."). The Ninth Circuit requires federal courts to reevaluate the prior federal decision in light of the more recently handed down state decision where a state court has made a subsequent pronouncement of state law. *Owen v. United States,* 713 F.2d 1461 (9th Cir.1983). In that case, a Ninth Circuit decision was later contradicted by a state court of appeals decision. In evaluating the appropriate course of action, the Court noted that,

> [t]hese recent decisions by the California courts of appeal that have appeared subsequent to our *Commercial Union [Insurance Co. v. Ford Motor Co.,* 640 F.2d 210 (9th Cir.1981)] decision requires us to reconsider the proper interpretation of § 877. Our interpretation in Commercial Union was only binding in the absence of any subsequent indication from the California courts that our interpretation was incorrect.

*Id.* at 1464. In that circuit, if the highest court of the state has not ruled on an issue, federal courts are directed to follow the intermediate appellate courts of the state unless convinced that the highest court would decide differently. *Id.* Similarly, other circuits have found that "[w]hen a conflict exists between holdings of the ... Circuit and more recent determinations of state appellate courts, the interpretation of the Circuit is not binding on federal district courts." *In re New York Asbestos Litig.,* 847 F.Supp. 1086, 1111 (S.D.N.Y.1994). In that situation, the federal court is directed to follow the outcome it believes the highest court of the state would follow. *In re E. & S. Dists. Asbestos Litig.,* 772 F.Supp. 1380, 1391 (E.D.N.Y.1991).

### 3. Which Precedent to Follow—*First Equity* or *Hayes?*

In light of Eleventh Circuit authority and the similar practices in other circuits, it appears that this court could follow *First Equity* instead of *Hayes.* Defendant, however, argues that *Moransais* and *First Equity* are both distinguishable. The holding of *Moransais* specifically applied only to professionals, stating "the economic loss rule does not bar a cause of action against a *professional* for his or her negligence even though the damages are purely economic in nature and the aggrieved party has entered into a contract with the professional's employer." *Moransais,* 744 So.2d at 983–84 (emphasis added). The *Moransais* court did engage in an inquiry to determine what sort of occupation would be defined as "profession," and it concluded that a "profession" is "any vocation requiring at a minimum a four-year college degree before licensing is possible in Florida." *Id.* at 976 (citing § 95.11(4)(a), Fla. Stat. (1997) and *Garden v. Frier,* 602 So.2d 1273, 1275 (Fla.1992)). Because a securities broker is not required to obtain a four year degree for licensing in Florida, defendant argues that the *Moransais* holding does not apply in this case.

The plaintiffs in *Moransais* sued a professional engineering corporation for breach of contract for failing to discover defects in the home the corporation inspected. The plaintiffs also sued the two engineers that performed the inspection for professional negligence. The Medalies, however, are not suing the defendant for professional negligence, so the holding of *Moransais* is not directly applicable to their case. However, the *Moransais* court did make two significant statements in dicta to guide the lower courts in future cases involving the economic loss rule. First, the court directly stated that professional negligence is not the only cause of action that can be maintained despite the economic loss rule—other well-established causes of action in tort also survive. *See id.* at 983 ("Today, we again emphasize that by recognizing that the economic loss rule may have some genuine, but limited, value in our damages law, we never intended to bar well-established common law causes of action, such as those for neglect in providing professional services.... The rule, in any case, should not be invoked to bar well-established causes of action in tort, such as professional malpractice."). The court also significantly narrowed the application of the economic loss rule to product liability-type cases. *See id.* ("[T]he rule was primarily intended to limit actions in the product liability context, and its application should generally be limited to those contexts or situations where the policy considerations are substantially identical to those underlying the product liability-type analysis.").

The real problem, which none of the parties address, is the fact that the Supreme Court of Florida did not overturn its decision in *AFM.* After briefly discussing the factual background and holding of the *AFM* case, the Florida Supreme Court stated, "While we continue to believe the outcome of that case [*AFM*] is sound, we may have been unnecessarily over-expansive in our reliance on the economic loss rule as opposed to fundamental contractual principles." [5] *Id.* at 980–81. *AFM* was heard by the Florida Supreme Court on certification of questions regarding the economic loss rule from the Eleventh Circuit in *AFM Corp. v. Southern Bell Tel. and Tel. Co.,* 796 F.2d 1467 (11th Cir.1986). The Supreme Court of Florida restated the Eleventh Circuit's questions as: "Does Florida permit a purchaser of services to recover economic losses in tort without a claim for personal injury or property damage?" *AFM,* 515 So.2d at 180. The court answered the question in the negative, consistent with its decision in *Florida Power & Light Co. v. Westinghouse Electric Corp.,* 510 So.2d 899 (Fla.1987). *See id.* The problem therefore is that in holding that a claim for breach of fiduciary duty is barred by Florida's economic loss rule, the Eleventh Circuit relied on *AFM,* holding that "If Florida courts dismiss fraud claims between parties to a contract under *AFM,* it is probable that the Florida courts would also dismiss fiduciary duty claims." *Hayes,* 920 F.2d at 776. The court reasoned that because a fraud claim, which in no way depends on the existence of a contract, is more likely to constitute a separate and independent tort under Florida law than a fiduciary duty claim, which does require existence of a contract, if the fraud claim is barred than the fiduciary duty claim is certainly barred. *See id.* at 777.

Therefore, because the Florida Supreme Court did not overrule *AFM* and the holding of *Hayes* was specifically based on the Florida Supreme Court's answer in *AFM,* then it is not clear whether *Hayes* has truly been overruled. *First Equity* does clearly state that *Hayes* is no longer good law and that in light of *Moransais,* claims for breaches of fiduciary duty between se-

**5.** Justice Wells concurred to specifically state that the Florida Supreme Court should have receded from the *AFM* decision "because that opinion erroneously applies the economic loss rule and has given rise to confusion as to the rule's applicability." *Moransais,* 744 So.2d at 984. Justice Wells argues that the economic loss rule "should be limited to cases involving a product which damages itself by reason of a defect in the product." *Id.*

curity brokers and clients are not barred by the economic loss rule. As a *per curiam* opinion, however, *First Equity* contains no analysis other than a brief citation and quote from *Moransais*. Additionally, *First Equity* is in conflict with another post-*Moransais* case which advocated a narrower approach to the decision. *Monroe v. Sarasota County School Board,* 746 So.2d 530, 538 (Fla. 2d DCA 1999) ("We do not believe, however, that *Moransais* should be read to allow recovery for purely intangible economic losses through negligence in a wider array of cases that do not present the same conflicting issues found in construction law.").

In light of this conflict, the court cannot hold that a claim for breach of fiduciary duty is not barred by the economic loss rule in light of *Moransais*. The continued vitality of *AFM* calls into doubt exactly how expansive a ruling *Moransais* intended to be. This question appears to be becoming an issue among the Courts of Appeal in Florida as evidenced by the broader Third District Court of Appeal decision in *First Equity* and the narrower Second District Court of Appeal in *Monroe*. Because the *Moransais* decision is still too new, not specifically on point, and apparently subject to conflicting interpretations in the lower courts in the state, the court declines to depart from the established Eleventh Circuit precedent in *Hayes* and holds that the economic loss

rule bars plaintiffs' breach of fiduciary duty claims.[6]

If this court were permitted, it would certify the question of whether the economic loss rule continues to operate as a bar to breach of fiduciary duty claims after *Moransais* to the Supreme Court of Florida; however, the Florida Constitution does not permit certification from a district court. Fla. Const. Art. 5, § 3(b)(6); Fla.R.App.P.Rule 9.150(a). Therefore, in light of the lack of clarity in the state law, the court believes this issue is one appropriate for interlocutory review from the Eleventh Circuit Court of Appeals under 28 U.S.C. § 1292(b). The court is of the opinion that this order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of this litigation. *See id.* The issues involved in this case are certain to recur, and it would prevent inconsistent decisions if these issues are conclusively resolved. If the parties choose to pursue interlocutory review and the Eleventh Circuit accepts their application for review, the Eleventh Circuit would have the ability to certify the question to the Supreme Court of Florida. Fla. Const. Art. 5, § 3(b)(6); Fla.R.App.P.Rule 9.150(a). The parties are reminded that in order to invoke the discretionary review by the Eleventh Circuit of this order, the parties must

---

**6.** If the court were not bound to follow Eleventh Circuit precedent, it would likely allow the breach of fiduciary duty claim to proceed without being barred by the economic loss rule. First, it appears that the thrust of the Supreme Court of Florida's decision in *Moransais* is to narrow the types of situations in which the economic loss rule applies. Second, valid public policy concerns weigh in favor of allowing breach of fiduciary duty claims to proceed even when the relationship of the parties was formed pursuant to a contract. Consider, for example, the situation where a stockbroker contractually agrees to manage a client's portfolio. "If such a stockbroker misrepresents certain investments, 'churns' the investor's account to generate excessive commissions, or engages in acts of

self-dealing, the stockbroker should face liability in contract, tort, or both. Allowing the economic loss doctrine to bar tort actions in these situations encourages wrongful conduct because the wrongdoer faces only a minimal risk—the possibility of paying compensatory damages. This application of the doctrine wrongly extends its protections to classes of individuals never intended to reap its benefits." *James G. Dodrill II, Interstate Securities Corp. v. Hayes Corp.: Should the Economic Loss Doctrine Apply to Actions Against Fiduciaries?,* 47 U.Miami L.Rev. 1193, 1209 (1996) (citing Michael A. Hanzman, Interstate Securities Corporation v. Hayes Corporation: An Unprecedented and Improper Expansion of Florida's "Economic Loss" and "Independent Tort" Rules, Fla.B.J., Apr. 1992, at 44–45).

apply for review within ten days of this order. § 1292(b).

### C. Fraud in the Inducement

### 1. Economic Loss Rule

■ Defendant moves to dismiss count III of plaintiffs' complaint, arguing that the fraud in the inducement claim is barred by the economic loss rule. In *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So.2d 1238, 1240 (Fla.1996), the Supreme Court of Florida recognized that fraud in the inducement can be an independent tort not barred by the economic loss rule. The court noted that

[f]raud in the inducement presents a special situation where parties to a contract appear to negotiate freely—which normally would constitute grounds for invoking the economic loss doctrine—but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior. . . .

The distinction between fraud in the inducement and other kinds of fraud is the same as the distinction drawn by a New Jersey federal district court between fraud extraneous to the contract and fraud interwoven with the breach of contract. With respect to the latter kind of fraud, the misrepresentations relate to the breaching party's performance of the contract and do not give rise to an independent cause of action in tort.

*Id.* (citing *Huron Tool & Engineering Co. v. Precision Consulting Services,* 209 Mich.App. 365, 532 N.W.2d 541, 545 (1995)). The court in *Hotels of Key Largo, Inc. v. RHI Hotels, Inc.,* 694 So.2d 74, 77 (Fla. 3d DCA 1997) added that one cannot avoid the economic loss rule by merely labeling a claim as fraud in the inducement, the fraud must be separate and distinct from the breaching party's performance of the contract.

■ In this case, plaintiff's fraud in the inducement claims are sufficient to survive the economic loss rule. Plaintiff alleges that prior to the purchase of the securities in question, defendant made material rep-

resentations on which the plaintiffs relied to induce them to purchase the securities. *See* Amend. Complaint at ¶¶ 37–39. Included among the misrepresentations was the amount of risk and return involved with the securities. *See id.* at ¶ 19. These are the types of allegations that fall under the justification for the fraudulent inducement exception to the economic loss rule described in *Hotels.* The ability of the plaintiffs to negotiate fair terms and make an informed decision has been undermined by the defendant's fraudulent behavior. For example, had the plaintiffs been told the true risks involved in the investments, they could have protected themselves by investing less money or by contracting for a guaranteed return from the defendant.

Defendant is correct in arguing that some of the material misrepresentations that form the basis of plaintiffs' fraud in the inducement claim are the same allegations that form the basis of the breach of contract claim. It appears, however, that the allegation at ¶ 19(e) which states in part that "the limited partnerships were long term investments and would generate dividends and thereafter would be sold, with the principal intact and at a profit, such that the rate of return would be substantially above that of Certificates of Deposit and money market funds," was not a part of their contract. Count IV makes no allegation that the defendant breached a contractual obligation to provide a rate of return higher than money market funds or CD's. Because plaintiffs' fraudulent inducement claim survives the economic loss rule based on ¶ 19(e), it is not necessary for the court to decide exactly which of plaintiff's allegations for fraud in the inducement mirror allegations that form the basis of the contract. To the extent that defendant induced plaintiff into signing a contract based on the promise of dividends and a high rate of return, plaintiffs' fraud in the inducement claim can be maintained. This allegation meets the *Hotels* test because it appears that even if defendant had met all the contractual obligations alleged by the plaintiffs including, adequate inves-

tigation, due diligence, meeting reporting requirements, complying with all rules and regulations, and correctly assessing risk tolerance, the plaintiffs would still appear to have a fraud in the inducement claim if their rate of return was not as promised. Accordingly, plaintiffs' fraud in the inducement claim survives the economic loss rule defense and defendant's motion to dismiss count III under the economic loss rule is denied.

### 2. Federal Rule of Civil Procedure 9(b)

 Rule 9(b) of the Federal Rules of Civil Procedure provides that: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R.Civ.P. 9(b). This rule "serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Durham v. Business Management Associates*, 847 F.2d 1505, 1511 (11th Cir.1988) (quoting *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir.1984), cert. denied, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985)). Further, "Rule 9(b) must be read in conjunction with Rule 8(a) [of the Federal Rules of Civil Procedure], which requires a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled to relief." *O'Brien v. National Property Analysts Partners*, 719 F.Supp. 222, 225 (S.D.N.Y.1989) (citing *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 n. 20 (2d Cir.1979), cert. denied, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980)). *See also Durham*, 847 F.2d at 1511 ("The application of [Rule 9(b) ] must not abrogate the concept of notice pleading."); *Berk v. Ascott Investment Corp.*, 759 F.Supp. 245, 254 (E.D.Pa.1991). Rule 9(b) may be satisfied if the complaint sets forth:

(1) precisely what statements were made in what documents or oral representations or what omissions were made, and

(2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and

(3) the content of such statements and the manner in which they misled the plaintiff, and

(4) what the defendants "obtained as a consequence of the fraud."

*Fitch v. Radnor Industries, Ltd.*, No. 90–2084, 1990 WL 150110, at *2 (E.D.Pa. Sept.27, 1990); *see also Durham v. Business Management Assoc.*, 847 F.2d 1505, 1512 (11th Cir.1988) ("Allegations of date, time, or place satisfy the Rule 9(b) requirement that circumstances of the alleged fraud must be plead with particularity ..."); *Leonard v. Stuart–James Co.*, 742 F.Supp. 653, 659 (N.D.Ga.1990) (Motion to dismiss granted where complaint failed to allege "specifically when, where, by whom, or specifically what the representation was.").

 When pleading fraud, the plaintiff generally should specifically identify the individuals who made the alleged misrepresentations, the time of the alleged fraud, and the place of the alleged fraud. *See Anthony Distributors, Inc. v. Miller Brewing Co.*, 904 F.Supp. 1363, 1365 (M.D.Fla. 1995). The plaintiff should also quote or paraphrase the alleged fraudulent misrepresentations made by the defendant. *See Metrahealth Insurance Co. v. Anclote Psychiatric Hospital, Ltd.*, No. 96–2547–CIV–T–17C, 1997 WL 728084, at * 2 (M.D.Fla. Oct.23, 1997). However, "alternative means are also available to satisfy the rule." *Durham*, 847 F.2d at 1512 (citing *Seville Indus.*, 742 F.2d at 791 (list containing allegations of fraud describing nature and subject of statements found to be sufficient, even where precise words used were not alleged)). Nevertheless, courts recognize that if the alleged fraud occurred over an extended period of time and the acts were numerous, the specificity requirements are less stringently applied.

See Anthony Distributors, Inc., 904 F.Supp. at 1366. This relaxed requirement is applied where "strict application of Rule 9(b) could result in substantial unfairness to private litigants who could not possibly have detailed knowledge of all the circumstances surrounding the alleged fraud." NCR Credit, 155 F.R.D. at 692. This does not negate the plaintiff's duty to adequately plead the contents of the alleged fraudulent representations and the places where the activity was to have occurred. See Anthony Distributors, Inc., 904 F.Supp. at 1366. The court reviews the defendant's' motion against these standards.

▆▆ Plaintiffs' allegations of fraud are contained in paragraph 19 of their amended complaint. In paragraph 20, plaintiffs identify the seven transactions that are the subject of the lawsuit. Plaintiffs provide the name of the investment purchased, the date it was purchased, and the amount of money they paid for it. Plaintiffs also identified George Bliss as the agent of FSC that made the alleged fraudulent misrepresentations to the plaintiffs. See Amend. Complaint at ¶¶ 12, 19. Plaintiffs state the time frame in which Bliss contacted the plaintiffs to solicit their business—from late 1984 until February 1985. See id. at ¶ 12. Plaintiff identified the place where Bliss contacted them—first in the faculty lounge at a school in the Watkins, N.Y. school system and then at the plaintiffs' home. See id. at ¶ 13–14. Plaintiffs both quote and paraphrase the material representations Bliss made to them at school and at their home. See id. at ¶ 19. The court concludes that the plaintiffs have given defendant sufficient information to satisfy the heightened pleading requirement of Rule 9(b). Plaintiffs have given the defendant the "who, what, where, and when" of the alleged fraud that took place. While plaintiffs do not give the exact dates of the meetings, they do provide a sufficiently narrow time frame from which defendant could be on notice as to when the meetings took place. Plaintiffs allege they did not discover the fraud until 1996—more than 10 years after

their meetings with Bliss. To require them to list the precise date of their meetings with Bliss would impose a heavy burden not required by Rule 9(b) and Rule 8(a). Plaintiffs cannot be expected to specify the exact time and particular place of each factual omission and misrepresentation. See, e.g., Onesti v. Thomson McKinnon Sec., Inc., 619 F.Supp. 1262, 1265 (N.D.Ill.1985) ("Plaintiffs cannot be expected to specify the exact time and particular place of each factual omission and misrepresentation. The complaint adequately specifies the transactions and the approximate time frame, the contents of the alleged misrepresentations and the essence of omitted information, and the identities of those involved."). Accordingly, defendant's motion to dismiss plaintiffs' fraud in the inducement claim for failure to comply with Rule 9(b) is denied.

## IV. Count IV—Breach of Contract

Defendant moves to dismiss plaintiffs' breach of contract claim, or in the alternative, moves for a more definite statement under Rule 12(e). It appears that plaintiffs have stated a claim for breach of contract, at the very least, by stating that they entered into an oral contract to receive reports about their investments and defendant failed to provide those reports. See Amend. Complaint at ¶¶ 21, 43, 45. The court agrees with defendant, however, that a more definite statement would be appropriate. In count IV, plaintiffs incorporate by reference paragraphs 1 through 25 of their complaint. Of those paragraphs, paragraph 19 is the only one that appears to lay out contractual terms. The problem is that if paragraph 19 contains the terms of the contract that were entered into between plaintiffs and defendant, then plaintiffs' fraud in the inducement claim would need to be dismissed. As it is, ¶¶ 19(b) and 19(f) clearly appear to be mirrored in ¶¶ 43 and 45, and to the extent plaintiffs believe that those paragraphs form the basis of a fraud in the inducement claim, they do not because they are interwoven with the performance

of the contract. Therefore, the court will require plaintiffs to clearly set forth the terms of the "oral agreement with FSC for the provision of investment advise [sic] and broker-dealer services" and the terms of the "due diligence, management and reporting thereto." The plaintiffs will state the parties to which each contract applies, clarify whether more than one contract was formed, state the terms of the contract that were breached, and state which securities laws or rules were breach. Plaintiff may only amend Count IV of the complaint to provide a more definite statement. Should it become apparent that plaintiffs' contract claims are composed of the same terms as plaintiffs' fraud in the inducement claims, the court would be willing to entertain a renewed motion to dismiss plaintiffs' fraud in the inducement claim.

**WHEREFORE, IT IS ORDERED THAT:**

1) Defendant's motion to dismiss Count I and Count II of plaintiff's complaint (DE # 16–1) is GRANTED;

2) Defendant's motion to dismiss Count III of plaintiffs' complaint (DE # 16–1) is DENIED;

3) Defendant's motion for a more definite statement on Count IV (DE # 16–2) is GRANTED. Plaintiff is ordered to submit a more definite statement to the court within 10 days of this order.

4) Plaintiff's motion for oral argument (DE # 28) is DENIED; and

5) Defendant's motion to extend time to file joint scheduling report (DE # 11) is now MOOT.