**In re FLAGSHIP HEALTHCARE, INC., Debtor.**

**Joel L. Tabas, as Trustee of the bankruptcy estate of Flagship Healthcare, Inc., and its subsidiaries, Plaintiff,**

**v.**

**Greenleaf Ventures, Inc., Greenleaf Ventures, Inc. d/b/a Greenleaf Associates, Timothy L. Stocksdale, and David Wallace, Defendants.**

**Bankruptcy No. 00–10050–BKC–RAM.**
**Adversary No. 01–1065–BKC–RAM–A.**

United States Bankruptcy Court, S.D. Florida.

Nov. 13, 2001.

---

**2.** The debtor gave the citation for the case as 183 B.R. 52 (Bankr.E.D.Tex.1995)(emphasis added).

Mara Beth Sommers, Miami, FL, Special Counsel to Joel L. Tabas, Trustee.

Michael S. Budwick, Miami, FL, for Defendants.

### *MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS*

ROBERT A. MARK, Chief Judge.

On March 7, 2001, Joel L. Tabas, as Chapter 7 Trustee (the "Trustee" or "Plaintiff") of Flagship Healthcare, Inc. and its subsidiaries ("Flagship" or the "Debtor"), filed this adversary proceeding against Greenleaf Ventures, Inc., Timothy Stocksdale and David Wallace (the "Defendants"). Stocksdale and Wallace (the "Individual Defendants") are principals of Greenleaf Ventures, Inc. The Defendants filed a motion to dismiss the adversary proceeding (the "Motion") on April 16, 2001. For the reasons that follow, the Motion is denied in part and granted in part without prejudice to the Trustee filing an amended complaint which attempts to cure the deficiencies in the existing Complaint.

### Factual and Procedural Background

In considering a motion to dismiss, the focus of the factual background is the Complaint itself, since the Court must accept the pleaded facts as true and resolve them in a light most favorable to the Plaintiff. This Order incorporates by reference each of the allegations in the Complaint. Certain material allegations are quoted or summarized below.

On December 4, 1997, Greenleaf Ventures, Inc. was engaged by the Debtor to act as a financial advisor in connection with acquisitions. Greenleaf Ventures, Inc. agreed to (1) identify acquisition candidates, and (2) analyze, structure and negotiate proposed acquisition transactions. These services were performed pursuant to an engagement agreement. (Complaint ¶ 8) [1]. In addition to the services provided by "Greenleaf" pursuant to the engagement agreement, "Greenleaf" provided other services to the Debtor, including a 39 page Confidential Memorandum and a financial analysis dated March 3, 1999 (the "Greenleaf Valuation"). [2]

The Greenleaf Valuation is at the heart of the negligence claims in this proceeding. After embarking on a series of acquisitions of service oriented companies, Flagship procured the Greenleaf Valuation to justify the significant goodwill number included on its balance sheet. The Greenleaf Valuation was furnished to Pricewaterhouse-Coopers ("PwC") in connection with a year end 1998 audit PwC was engaged to perform. Allegedly, PwC relied on the Greenleaf Valuation in finding it unnecessary to make any downward adjustments

in the goodwill number. Further, the Debtor's alleged reliance on the PwC audit resulted in the Debtor making a bad decision to obtain increased financing and to acquire yet another company leading to or hastening Flagship's demise. Since the factual context of the Greenleaf Valuation is important, a more detailed description of the acquisitions follows.

Flagship acquired three companies prior to obtaining the Greenleaf Valuation in the following transactions:

— July 1, 1997 purchase of Professional Rehabilitation Associates ("Rehab") for $9,100,000. $8,897,000 was recorded as "costs in excess of net assets acquired" or goodwill (¶ 16, 19).

— July 1, 1997 purchase of Special Care Home Health, Inc., and related companies ("Special Care") for $15,600,000. $11,886,000 of the purchase price was recorded as goodwill (¶ 17, 19).

— September 3, 1998 purchase of IV Concepts for $16,188,000, $14,262,000 of which was booked as goodwill (¶ 20, 21)

The Complaint alleges that by the end of 1998 (prior to the Greenleaf Valuation), the revenues generated from the acquired companies had significantly declined, casting doubt on the validity of the goodwill numbers recorded on the company's balance sheet. In sum, at the time the Greenleaf Valuation was prepared and PwC performed its audit, Flagship had already spent nearly $41,000,000 in acquisitions, with over $35,000,000 booked as goodwill, and the acquired companies were not generating the revenues expected at the time of the acquisitions.

---

**1.** Hereafter, the phrase "(¶ _)" will be in reference to numbered paragraphs in the Complaint.

**2.** Significantly, although the Complaint refers to a specific agreement between Flagship and the corporate defendant, Greenleaf Ventures,

Inc., the Complaint defines the term "Greenleaf" to collectively refer to Greenleaf Ventures, Inc. and the Individual Defendants. (¶ 5). This broadly defined term is the one predominantly used throughout the Complaint.

As referenced earlier, in 1998, PwC was engaged to audit the financial statements of the Debtor and submitted an audit report on March 22, 1999 for the calendar year ending December 31, 1998 (the "Audit Report"). In the Audit Report, PwC concluded that the financial information provided to it was in conformance with generally accepted accounting principles. (¶ 30–34). Specifically, PwC noted no events or changes in circumstances indicating that the carrying value of the intangible assets (including the large goodwill number) may not be recoverable. The Audit Report stated that "[t]he Company does not believe that any impairment has occurred at December 31, 1998." (¶ 34).

In reaching its conclusions, PwC relied on the Greenleaf Valuation. (¶ 35). In fact, the financial information provided in the Greenleaf Valuation was done for the purpose of justifying the goodwill number for PwC. (¶ 36).

After PwC issued the Audit Report, Flagship continued its acquisition program purchasing MedChoice, Inc. ("MedChoice") on July 6, 1999 for $22,000,000. (¶ 23). To pay for the MedChoice acquisition, to refinance existing indebtedness and to provide working capital, on June 30, 1999, Flagship entered into a $40,000,000 term loan and obtained a $15,000,000 revolving credit facility from a group of banks (the "Bank Group"). (¶ 25). Allegedly, Flagship's management and its outside directors relied on the Audit Report, which included an amount attributable to goodwill justified by the Greenleaf Valuation, in making the decision to acquire MedChoice and to enter into the $55,000,000 loan transactions. (¶ 56, 57). It is also alleged that the Defendants knew that the Audit Report, which included the goodwill numbers justified by the Greenleaf Valuation, would be furnished to, and relied upon, by creditors, including the Bank Group. (¶ 57).

The one count Complaint alleges that the Defendants were negligent in the preparation of the Greenleaf Valuation. Plaintiff alleges that "Greenleaf" owed a duty to the Debtor "to exercise due professional care and adhere to all professional and industry standards in rendering its valuation opinions." (¶ 60). The Complaint alleges several errors and omissions, including failure to perform a discounted cash flow analysis "in accordance with the standards applicable to the valuation of goodwill" (¶ 44), failure to analyze Flagship's assets at their lowest levels (¶ 45), failure to value the goodwill over the life of the assets (¶ 46), and, including, without justification, a $5,000,000 forecasted cash balance as of December 31, 1998. (¶ 48). In sum, the Trustee alleges that "the Greenleaf [V]aluation was materially unreliable and incorrect" and "materially overstated the value of Flagships goodwill." (¶ 53 and 54). Finally, the Complaint alleges that Flagship was damaged as a result of Greenleaf's negligence.

The Court conducted a hearing on the Motion on May 25, 2001. The Court has completed a thorough review of the record, including the Complaint and the Motion, and the arguments presented by counsel at the May 25th hearing. The Court has also reviewed the case law cited by the parties and additional cases located in the Court's independent research.

### Discussion

### A. Motion to Dismiss Standard and Summary of the Argument

On a motion to dismiss a complaint, the factual allegations set forth in a complaint are presumed to be true and all factual inferences must be drawn in favor of the plaintiff and against the defendant. *See Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1198 fn. 2 (11th Cir.2001). In considering a motion to dismiss, a court places a

"very high burden" on a defendant to show that a plaintiff cannot conceivably prove any set of facts which would entitle him to relief. *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Beck v. Deloitte & Touche et al.*, 144 F.3d 732, 735–36 (11th Cir.1998). In testing the sufficiency of a complaint, the Federal Rules of Civil Procedure require only "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant County*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

The Motion seeks dismissal of the Complaint against all of the Defendants, arguing that (1) the Trustee lacks standing to pursue the claim since the only alleged damages are damages to specific creditors; (2) the claim fails to allege facts establishing proximate cause because the negligence of PwC in preparing the Audit Report superceded any purported negligence by the Defendants; and (3) the economic loss rule precludes a party to a contract from suing in tort to pursue solely economic losses. The Motion includes two additional arguments for dismissal of the Complaint against the Individual Defendants: (1) that the Complaint does not specifically allege that either of the Individual Defendants actually performed the analysis included in the Greenleaf Valuation; and (2) that the Individual Defendants did not provide "professional" services and therefore may not be sued individually for services provided under an agreement between the Debtor and the corporate Defendant, Greenleaf Ventures, Inc.

The Motion is denied as to the corporate Defendant, Greenleaf Ventures, Inc. The Trustee has alleged sufficient facts to state a negligence claim on behalf of the Debtor (for which the Trustee clearly has stand-ing) and has alleged that the Debtor was damaged by the negligence. Causation is sufficiently pled and PwC's alleged negligence does not constitute, as a matter of law, a superceding intervening cause. Finally, the record is insufficient with respect to the nature and scope of any contract between the parties for preparation of the Greenleaf Valuation to find, based solely upon the Complaint, that the economic loss rule would bar the Trustee's negligence claim.

The Motion is granted in part as to the Individual Defendants, without prejudice to the Trustee filing an amended complaint. The existing Complaint does not plead which of the material actions were taken by which of the Individual Defendants and therefore fails to state a negligence claim against either of them. Moreover, there is neither a direct allegation nor facts to support an allegation that the Individual Defendants are "professionals," which they must be in order to be sued for negligence in performing services under a contract between the Debtor and Greenleaf Ventures, Inc., the Individual Defendants' corporate employer.

### B. Arguments of the Parties and Conclusions of Law

The Motion first argues that the Trustee lacks standing to pursue the negligence claims since the only specific damage allegations refer to damages suffered by specific creditors, in particular, the Bank Group. This argument raises two issues: first, whether the Trustee has standing to pursue the claims on behalf of specific creditors, and second, whether the Complaint sufficiently alleges that the Debtor (as distinct from creditors) was damaged by the alleged negligence.

### 1. The Trustee Has Standing Only to Assert Claims on Behalf of the Debtor

Under § 704 of the Bankruptcy Code, a trustee is required to collect and

reduce to money property of the debtor's estate. Section 541 of the Code defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." Although courts have given the statutory phrase "property of the estate" an expansive definition *see United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), nevertheless, "only causes of action belonging to the debtor at the commencement of the case" are property of the estate that a trustee can pursue. *In re Ozark Restaurant Equip. Co.*, 816 F.2d 1222, 1224–25 (8th Cir.1987). Thus, if a specific cause of action is not property of the estate, a trustee has no authority to bring such an action.

In *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), the United States Supreme Court held that a trustee has no standing to assert claims of a certain group of creditors of a debtor against that debtor. The Court stated that "Congress has not yet indicated even a scintilla of an intention" to confer such standing on trustees, "and that such a policy decision must be left to Congress and not to the judiciary." *Id.* at 434, 92 S.Ct. 1678. Moreover, the Court continued that there is no statutory authority for a trustee "to assume the responsibility of suing third parties on behalf of [creditors]," or that a trustee may "collect money not owed to the estate." *Id.* at 428, 92 S.Ct. 1678.

The Eleventh Circuit applied *Caplin* in *E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979 (11th Cir.1990), where it held that a trustee had no standing to assert claims on behalf of specific creditors of a debtor. Thus, it is clear that in the instant case, the Trustee lacks standing if he is only asserting a claim based upon alleged damages to the Bank Group, who relied on the Audit Report and Greenleaf Valuation.[3]

### 2. *The Complaint Alleges Damages to the Debtor*

■ Based upon the foregoing conclusion that a trustee may only bring causes of action on behalf of a debtor in bankruptcy, a necessary corollary is that the Complaint must allege damages suffered by the debtor itself. Damages incurred by creditors are of no legal consequence. In the instant case, the Defendants aver that the Trustee has failed to assert damages incurred by the Debtor. More specifically, since the alleged financial injury stems from the inability of the Debtor to re-pay debt, it is the creditors who have been injured by any negligence by the Defendants, not the Debtor. Therefore, the Motion concludes, the Trustee cannot maintain a viable cause of action against the Defendants on the facts set forth in the Complaint.

In support, Defendants cite to *Hirsch v. Arthur Andersen & Co.*, 178 B.R. 40, 44 (D.Conn.1994), where the court ruled that Arthur Anderson's conduct in recommend-

---

3. A more debatable issue of law, although one not properly framed by the parties in the instant case, is whether a trustee has standing to assert claims on behalf of all of the creditors of a debtor. In a related adversary proceeding, *Flagship v. Francis L. Shea, et al.*, Adv. No. 01–1145, the Court issued a bench ruling on September 24, 2001, holding that a trustee has no standing to assert a general claim on behalf of creditors of a debtor. Without repeating the lengthy discussion contained in that bench ruling, the Court adopted the analysis in *Ozark Restaurant* and rejected the reasoning of the Second Circuit in *St. Paul Fire and Marine Insurance Co. v. Pepsi-Co*, 884 F.2d 688 (2d Cir.1989) and the Seventh Circuit in *Koch Refining v. Farmers Union, et al.*, 831 F.2d 1339 (7th Cir.1987). In coming to this conclusion, the Court found persuasive the reasoning of the Eleventh Circuit in *Hadley* and District Judge Nesbitt's analysis of standing in *Feltman v. Prudential Bache Securities*, 122 B.R. 466 (S.D.Fla.1990).

ing the purchase of unworthy properties caused damage to the creditors, not the debtor. The Defendants argue that equally in the instant case, the damages were incurred by the creditors and not the Debtor and therefore the Trustee cannot pursue the instant cause of action.

The Court disagrees, finding that the Trustee has stated a claim by asserting damages incurred independently by the Debtor. As an initial matter, the Complaint does allege that Flagship was damaged by Defendants' negligence. (¶ 63). Although the Complaint lacks specificity in describing the damages suffered by the Debtor, courts are appropriately reluctant to dismiss complaints at the motion to dismiss stage based upon the specificity of the damage allegations as long as the claims as pled are claims belonging to the Debtor. *See Official Committee of Unsecured Creditors v. R.F. Lafferty and Co., Inc.*, 267 F.3d 340 (3d Cir.2001); *In re Plaza Mortgage and Finance Corp.*, 187 B.R. 37, 43–44 (Bankr.N.D.Ga.1995).

Addressing the Defendants' argument, this Court notes that even though the *Hirsch* decision cited by the Defendants was affirmed by the Second Circuit in *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir.1995), the district court was affirmed solely as to its holding. In fact, the Second Circuit disagreed with the district court's conclusion that the corporation could not have been damaged, reasoning in part that "there is at least a theoretical possibility that some independent financial injury to the Debtors might be established . . . as a result of the alleged professional malpractice by defendants-appellees." *Id.* at 1094.

Moreover, although not specifically pled as a damage theory, the Complaint describes financial deterioration of the Debtor. These facts may support a claim for damages incurred by the Debtor under the so-called "deepening insolvency" theory. *See R.F. Lafferty*, 267 F.3d 340, 349–50. In *Lafferty*, the Third Circuit went through an extensive analysis and review of the case law, concluding that wrongful conduct that results in increased debt can cause damage to a corporation. *See id.* at 349–53. As applied to the instant case, even if the Debtor may have been insolvent before the Greenleaf Valuation, the additional debt incurred thereafter, and allegedly as a result of the Defendants' negligence, may provide a measure of damages recoverable by the Trustee.

Furthermore, additional debt which results in an entity filing for bankruptcy has the potential of creating "operational limitations which hurt a corporation's ability to run its business in a profitable manner." *Id.* at 349–50. In the world of corporate workouts, turnaround managers and the possibility for a quick change in an economic tide, it is not uncommon for a corporation to revitalize itself and work out financial problems no matter how dire they appear. The financial hardships which possibly resulted from the increased insolvency were not necessarily forthcoming, and if it can be proven that they were a result of the increased insolvency, liability may be found.[4]

The Complaint states that "the Outside Directors [of the Debtor] relied on the valuation provided to them [by Greenleaf]

4. To utilize judicial/artistic license, the Debtor's situation was not like an individual who sits in the rain all day and simply cannot get more wet. It is more akin to a boxer with one black eye who, despite being injured, might still persevere and win the fight. If that boxer (the debtor) winds up losing the fight and landing in the hospital (bankruptcy court), a doctor (judge) might find that it was the additional injuries (deepening insolvency) which put him there.

in Flagship's financial statements in making certain decision as to the operation of the company, including, but not limited to, the decision to enter into the $40,000,000 term loan and the $15,000,000 revolving loan facility with the Bank Group and the decision to spend $22,000,000 on the acquisition of MedChoice." (¶ 56). This decision to pursue the MedChoice acquisition resulted in increased debt and eventual insolvency and significantly contributed to the Debtor's financial death. Viewing the Complaint liberally, in a light most favorable to the Plaintiff, this allegation states a claim on behalf of the Debtor for damages caused by the Greenleaf Valuation.

### 3. *The Complaint Alleges Proximate Causation*

■ The Defendants also argue that this adversary proceeding must be dismissed for failure to sufficiently allege proximate causation. Proximate cause generally means that the defendant's wrongful act caused damage to the plaintiff which gives rise to the cause of action. *See McDonald v. Florida Dep't of Transportation*, 655 So.2d 1164, 1168 (Fla. 4th DCA 1995). Therefore, in order for a plaintiff to establish the element of proximate cause, there must be a "natural, direct and continuous sequence between the negligent act and the injury that it can reasonably be said that but for the act the injury would not have occurred." *Id.* citing *Jones v. Utica Mut. Ins. Co.*, 463 So.2d 1153 (Fla.1985).

■ It is well-settled law that "[t]he circumstances under which a court may resolve the question of proximate cause as a matter of law are extremely limited." *LeMaster v. Glock*, 610 So.2d 1336, 1338 (Fla. 1st DCA 1992). In *Helman v. Seaboard Coast Line R.R. Co.*, 349 So.2d 1187, 1189 (Fla.1977), the Florida Supreme Court stated that "the question of whether defendant's negligence was the proximate cause of the injury is generally one for the jury unless reasonable men could not differ in their determination of that question."

Notwithstanding the high standard for obtaining dismissal of a complaint on proximate causation grounds, the Motion argues that the "superceding and intervening act" doctrine immunizes the Defendants from liability in the instant case. *See Valdes v. Miami Herald Pub. Co.*, 782 So.2d 470, 471 (Fla. 3rd DCA 2001) ("The issue of proximate cause generally presents a question of fact. However, the question of proximate cause is one for the court where there is an active ... intervening cause.") (internal quotations omitted). The Defendants argue that the negligence of PwC, the Debtor's independent auditors, superceded any purported negligence by the Defendants. As such, the Defendants argue that their purported negligence cannot be deemed the legal cause of damages to the Debtor.

In support of this argument, the Defendants cite to *Cortes v. Delta Air Lines, Inc.*, 638 So.2d 108 (Fla. 3rd DCA 1994). In *Cortes*, the defendant airline allegedly failed to comply with a passenger's request for assistance in boarding and disembarking from its airplane. Thereafter, a second airline twice failed to assist her, the second time immediately before the accident giving rise to the claim. In granting summary judgment on the claim of negligence against the first airline, the court reasoned that "the effect of the [first airline's] negligence was therefore clearly superceded by a series of intervening events which included a lengthy period which the plaintiff spent at the airport without incident, and more importantly [the second airline's] own subsequent negligence, twice—once immediately before the accident-declining to give her the help she needed." *Id.* at 110.

The Defendants urge the Court to apply the *Cortes* reasoning here, arguing that the alleged negligence of PwC in preparing the Audit Report was an intervening event barring liability against the Greenleaf entities. The Court disagrees, finding that the instant case is distinguishable from *Cortes*. Paragraph 56 of the Complaint alleges that

"the Management of Flagship relied on the valuation of goodwill provided ... by Greenleaf on March 3, 1999. Additionally, the Outside Directors relied on the valuation of goodwill provided to them in Flagship's financial statements in making certain decisions as to the operation of the company, including, but not limited to, the decision to enter into the $40,000,000 term loan and the $15,000,000 revolving loan facility with the Bank Group and the decision to spend $22,000,000 on the acquisition of MedChoice." (¶ 56).

Thus, the Trustee is not alleging that the Debtor relied solely on PwC which relied on Greenleaf. Rather, he is alleging that there was an independent reliance by the Debtor on the Greenleaf Valuation, which was the proximate cause of the damages.

■■■ In *McDonald,* the court stated that "two separate acts can be the proximate cause of the same injury." 655 So.2d at 1168. "If an injury is caused by the concurring negligence of two or more parties, each of them is liable to the injured party to the same extent as though the injury had been caused by each party's negligence alone." *Id. citing Jackson v. Florida Weathermakers,* 55 So.2d 575 (Fla. 1951). "Moreover, an intervening act will absolve an original tortfeasor of liability only when it is independent of the original negligence and not set in motion by the original negligent act." *McDonald,* 655 So.2d at 1168.

■■■ This statement of the law is directly applicable to the instant case since the alleged intervening act is not independent of the original alleged negligent act. The Complaint sets forth that (1) the PwC Audit relied on the Greenleaf Valuation, which was in turn relied upon by the Debtor and caused the damage, and (2) there was independent reliance by the Debtor on the Greenleaf Valuation. The interwoven relationship between PwC and Greenleaf does not act as an intervening cause; as alleged, it is a secondary cause which does not shield the Defendants from liability under the superceding and intervening act doctrine. Therefore, to the extent the Motion seeks dismissal based on failure to allege proximate cause, the Motion is denied.

### 4. *The Complaint Fails to State a Claim Against the Individual Defendants*

■■■ The Individual Defendants argue that the Complaint fails to state a claim against them individually, because (1) they are not professionals, and (2) they did not independently enter into a contract directly with the Debtor. In *Moransais v. Heathman,* the Florida Supreme Court held that "the formation of a corporation or partnership shall not relieve the individual members of their personal *professional* liability." 744 So.2d 973, 978 (Fla.1999) (emphasis added). Implicit in the court's holding is that there can be no plain negligence claim by an injured party against an individual *non-professional* employee of a corporate entity that performs services pursuant to a contract. The Individual Defendants contend that since there are no allegations of their professional status, the cause of action for negligence cannot be maintained as a matter of law. The Court agrees. Despite describing Defendants' duty as a duty to exercise "professional" care and to adhere to "professional" stan-

dards (¶ 60), the Trustee does not allege that the Individual Defendants were, or held themselves out to be, professionals. Unless the Plaintiff can allege that the Individual Defendants rendered "professional" services, as that term is interpreted under Florida law, the Plaintiff cannot state a claim for negligence against those individuals.

The Complaint against the Individual Defendants is also deficient in its failure to allege which of the Individual Defendants did which of the alleged acts constituting the factual basis of the negligence claim. As described earlier, the Complaint groups together the three individual defendant entities, Greenleaf Ventures, Inc., Stocksdale and Wallace, referring to them collectively as "Greenleaf." Using a defined term to refer to all three Defendants renders the Complaint ineffective in stating a claim against either of the Individual Defendants since it is impossible to determine which acts either of them are alleged to have committed. *See Veltmann v. Walpole Pharmacy, Inc.,* 928 F.Supp. 1161, 1164 (M.D.Fla.1996) ("The complaint fails to separate each alleged act by each defendant into individually numbered paragraphs. It is virtually impossible to ascertain from the Complaint which defendant committed which alleged act.").

For both of the foregoing reasons, the Court finds that the Complaint should be dismissed against the Individual Defendants without prejudice to the Trustee filing an amended complaint. The amended complaint must include the following two items: (1) facts supporting an allegation that the Individual Defendants rendered "professional" services under Florida law, taking into specific account the holding and discussion in *Moransais,* and (2) specific allegations as to which acts constituting the alleged wrongdoing were undertaken by each of the Individual Defendants.

### 5. *Economic Loss Rule*

Simply stated, the economic loss rule provides that "a party to a contract may not pursue a claim in tort for solely economic losses unless the party breaching the contract has committed a tort which is distinguishable from or independent of the breach of contract." *Medalie v. FSC Securities Corp.,* 87 F.Supp.2d 1295, 1299–1300 (S.D.Fla.2000) (citing cases). In the instant case, the Defendants argue that the economic loss rule bars the Trustee's negligence claim as the Defendants' actions that are alleged to have caused the damages to the Debtor were performed pursuant to a contract.

In response, the Trustee claims that the services rendered which constituted the alleged negligence was separate and distinct from those actions done pursuant to any contract with the Defendants and thus, the negligence claim falls outside of the scope of the economic loss rule. Looking solely at the Complaint, the Court agrees with the Trustee. The Complaint does not attach nor expressly refer to a contract for preparation of the Greenleaf Valuation. "[A] court may not properly go beyond the four corners of the complaint in testing the legal sufficiency of the allegations set forth therein." *Hewett–Kier Construction, Inc. v. Lemuel Ramos and Assoc., Inc.,* 775 So.2d 373, 375 (Fla. 4th DCA 2000) (internal citations and quotations omitted). In *Hewett–Kier,* the court ruled that a trial court may not rely on a contract in dismissing a claim for negligence based on the economic loss rule where the contract was not sued upon nor was it attached to the complaint. *See id.* at 375–76. So too regarding the pertinent facts in the instant case, and therefore the Defendants' argument is rejected at the motion to dismiss stage without prejudice to the Defendants raising this issue later in the case. *Cf. Al–Hakim v. Holder,* 787

So.2d 939, 941 (Fla. 2nd DCA 2001) ("A motion to dismiss is not a substitute for a motion for summary judgment.").

■ As to the Individual Defendants, the economic loss rule's applicability will depend on their professional status. Under Florida law "the economic loss rule does not bar a cause of action against a professional for his or her negligence even though the damages are purely economic in nature and the aggrieved party has entered into a contract with the professional's employer." *Medalie*, 87 F.Supp.2d at 1300 *quoting Moransais*, 744 So.2d at 983–84. Restated, if the Individual Defendants can be shown to be "professionals" under Florida law, the Trustee may maintain a cause of action against them even if it is established that the Greenleaf Valuation was provided under a contract between Flagship and Greenleaf Ventures, Inc.

### Conclusion

The Motion to Dismiss is denied as to the corporate defendant, Greenleaf Ventures, Inc. The Trustee has standing since he has alleged a claim on behalf of the Debtor corporation. The sole count of the Complaint is a claim of negligence and the Trustee has sufficiently pled that (1) the Defendants owed a duty to the Debtor; (2) the duty was breached by the negligent performance of services; and (3) that the Defendants' negligence was the proximate cause of damages to the Debtor.

The Motion to Dismiss is granted as to the Individual Defendants without prejudice to the Trustee filing an amended complaint which (1) contains sufficient allegations to demonstrate that the Individual Defendants were acting as "professionals" as that term has been interpreted under Florida law, and (2) describes which of the Individual Defendants is the subject of each material allegation.

For the foregoing reasons, it is—

**ORDERED** as follows:

1. The Motion to Dismiss the Complaint against Defendant, Greenleaf Ventures, Inc., is denied.

2. The Motion to Dismiss the Complaint against Defendants, Timothy L. Stocksdale and David Wallace, is granted without prejudice to the Trustee filing an amended complaint.

3. The Trustee shall file and serve an amended complaint on or before *December 6, 2001,* addressing the deficiencies described in the Complaint. If the Trustee fails to file and serve an amended complaint by *December 6, 2001,* the Individual Defendants may file a Certificate of Non–Compliance and a proposed Order dismissing the Complaint against the Individual Defendants with prejudice.