In re ATLANTA RETAIL, INC.,
f/k/a Wolf Camera, Inc., et
al., Debtors.

Atlanta Retail, Inc., f/k/a Wolf Camera,
Inc., Atlanta Retail Subsidiary, LLC
f/k/a WolfXpress.com, LLC, Atlanta
Retail, L/P/ f/k/a Texas Photo Finish,
L.P., and Atlanta Retail Partner, Inc.,
f/k/a Fox Photo Partner, Inc. and Wa-
chovia Bank, National Association,
Plaintiffs,

v.

Eastman Kodak Company, Defendant.

Bankruptcy Nos. 01–83470, 01–
83472, 01–83474, 01–83475.
Adversary No. 02–6454.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

June 10, 2003.

Jeffrey W. Kelley, Powell, Goldstein, Frazier & Murphy LLP, Mary Grace Diehl, Troutman Sanders LLP, Atlanta, GA, Jay Teitelbaum, Morgan, Lewis and Bockius, LLP, New York City, for Plaintiff.

Daniel W. Sklar, Nixon Peabody LLP, Manchester, NH, Kenneth A. Shapiro, Mitchell & Shapiro, Atlanta, GA, for Defendant.

## ORDER

C. RAY MULLINS, Bankruptcy Judge.

On October 11, 2002, Atlanta Retail, Inc. f/k/a Wolf Camera, Inc., *et al.* (the "Debtors" or "Wolf Camera") and Wachovia Bank, National Association, f/k/a First Union National Bank ("Wachovia" and together with the Debtors, the "Plaintiffs" and individually, each a "Plaintiff"), filed a Complaint for Injunctive Relief (the "Complaint"). The Complaint seeks injunctive relief against Eastman Kodak Company (the "Defendant" or "Kodak"). On December 19, 2002, the Defendant filed a Motion to Dismiss Complaint (the "Motion"). For the following reasons, the Motion is denied.

## I. FINDINGS of FACT:

### A. Pre–Petition

Wolf Camera was a leading specialty retailer of photographic and digital imaging products and services. Wolf Camera operated more than 500 stores and employed approximately 5,000 people. Wolf-Camera's pre-petition operations were in part financed by a credit agreement (the "Pre–Petition Credit Agreement"), which provided for, among other things, a revolving credit facility in the original principal amount of $130 million and a term loan in the original principal amount of $20 million. (Complaint ¶ 23(a)).[1] Pursuant to that certain Master Security Agreement, all of the Wolf Camera's obligations under the Pre–Petition Credit Agreement were secured by substantially all of its assets, including inventory, receivables, and intellectual property. (¶ 23(c)).

---

1. Hereafter, the phrase "(¶ _)" will be used to reference quoted or summarized numbered paragraphs in the Complaint.

Kodak supplied substantially all of the photographic film, paper, and chemicals used in Wolf Camera's business. (¶ 33). In August of 1992, Kodak and Wolf Camera entered into the first of several supply and financing agreements (the "1992 Kodak Loan Agreement"). (¶ 34). Wolf Camera granted Kodak liens on substantially all of its assets as collateral for the loan; however, such liens and Kodak's right to repayment were subordinate to the liens and claims of the Pre–Petition Lenders. (¶ 39). The subordinate status of Kodak's financing was memorialized in that certain intercreditor agreement dated as of August 27, 1992 (the "1992 Intercreditor Agreement") and that certain subordination agreement, dated as of October 13, 1992 (the "1992 Subordination Agreement"). (¶ 40).

From time to time, the 1992 Kodak Loan Agreement was amended to reflect, among other things, additional monies loaned, guarantees made by Kodak to Wachovia on behalf of Wolf Camera, and certain agreements by Wolf Camera to increase its purchases of Kodak products. (¶¶ 44–46). In September of 1998, Wolf Camera and Kodak entered into an Amended and Restated Loan and Purchase Agreement (the "1998 Amended Agreement"). The 1998 Amended Agreement, among other things, confirmed the following: a) the amount owed to Kodak under the 1992 Kodak Loan Agreement; b) the subordinate status of the Kodak loans; and c) Wolf Camera's obligation to purchase all of their paper and chemical goods from Kodak. An express condition precedent to the effectiveness of the 1998 Amended Agreement was Wachovia's consent and execution of intercreditor and subordination agreements with Kodak. (¶ 47). As required, Kodak and Wachovia executed a subordination agreement (the "1998 Subordination Agreement") and an intercreditor agreement (the "1998 Intercreditor Agreement").

The 1998 Subordination Agreement provided, among other things, that Kodak's claims and liens arising from Wolf Camera's indebtedness to Kodak are subordinate in all respects, including the right of payment, to prior payment in full of all obligations of Wolf Camera to Wachovia and the Pre–Petition Secured Lenders, up to the amount of $120 million dollars. (¶ 48(a)). It also provided that Wachovia would not be liable to Kodak for any action or failure to act, unless such action or inaction constituted gross negligence or willful misconduct. (¶ 48(d)). The 1998 Intercreditor Agreement provided, among other things, that Kodak and Wachovia would use their best efforts to give the other notice of its actions which may significantly affect the other with regard to the ability of Wolf Camera to meet its obligations. (¶ 49(a)). Notwithstanding, the agreement provided that absent bad faith, willful misconduct or gross negligence, the failure to give notice would not result in any liability. (¶ 49(a)). The 1998 Intercreditor Agreement also provided that pursuant to the Pre–Petition Credit Agreement, the affirmative, prior written consent of the Pre–Petition Secured Lenders was required for Wolf Camera to grant to Kodak any security interest or to the making of additional loans or other financial accommodations. (¶ 49(c)).

In March of 2000, Kodak and Wolf Camera entered into a Second Amended and Restated Loan and Purchase Agreement, pursuant to which Kodak agreed to make a $30 million subordinate loan to Wolf Camera. (¶ 50). This was in addition to the approximate $9 million in subordinate loans then outstanding. (¶ 50). As a condition precedent to any Kodak loan under the Second Amended and Restated Loan and Purchase Agreement, Kodak had to receive certain consents from Wachovia. (¶ 59). Prior to Kodak's receipt of Wacho-

via's consent, and without a budget from Wolf Camera delineating how the funds would be used, Kodak disbursed the $30 million loan to Wolf Camera. (¶ 61). All or substantially all of the funds from the loan were paid to the Pre–Petition Secured Lenders.

### B. The Bankruptcy Case

On June 21, 2001, Wolf Camera and its affiliates[2] filed voluntary petitions for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). As of the petition date, the Debtors were indebted to the Pre–Petition Secured Lenders in the principal amount of approximately $77,600,000, plus interest, fees, costs and expenses (the "Pre–Petition Indebtedness"). (¶ 23(d)). The Pre–Petition Secured Lenders filed proofs of claim, which included a claim for the full amount of Kodak's subordinate claim. (¶ 25).

Pursuant to an emergency motion dated June 21, 2001 (the "DIP Motion"), the Debtors sought Court authorization to: 1) obtain DIP financing up to the principal amount of $10 million from Wachovia and other financial institutions (the "DIP Lenders"); 2) utilize cash collateral and other collateral of the Pre–Petition Lenders; and 3) provide adequate protection to the Pre–Petition Lenders. (¶ 26). The Official Committee of Unsecured Creditors (the "Committee") objected to the DIP Motion. (¶ 27). Kodak did not file an objection to the DIP Motion. (¶ 28).

On July 25, 2001, a final hearing was held on the DIP Motion. Thereafter, the Court entered an order approving the DIP financing (the "Final Order"). Pursuant to the Final Order, the Debtors borrowed over $8 million from the DIP Lenders and used cash collateral and other collateral of

the Pre–Petition Secured Lenders. (¶ 29). The Final Order granted the Pre–Petition Secured Lenders a security interest in and lien upon substantially all of the Debtors' assets and a superpriority claim, junior only to the security interest and debt owning to the DIP Lenders. (¶ 29). The Final Order also contained a January 28, 2002 deadline to bring any claims challenging the validity, enforceability, characterization, priority or extent of the Pre–Petition Indebtedness. (¶ 31).

Pursuant to a motion dated August 23, 2001 (the "Asset Purchase Motion"), the Debtors sought an order approving the Asset Purchase Agreement between the Debtors and Ritz Camera Centers, Inc. ("Ritz"), pursuant to which, Ritz would acquire substantially all of the Debtors' assets. (¶ 69). On September 13, 2001, the Debtors, along with Wachovia, filed an Amended Joint Motion to Approve Stipulation with Respect to Distribution of Proceeds from Sale of Assets of Debtors (the "Stipulation Motion"). (¶ 70). The Committee and Kodak opposed the Asset Purchase Motion. Only the Committee opposed the Stipulation Motion.

In its objection to the Asset Purchase Motion, Kodak acknowledged the validity and senior status of the claims of the Pre–Petition Lenders; however, Kodak alleged that the sale of assets to Ritz violated section 363(f) of the Bankruptcy Code. (¶¶ 72, 77). After several days of hearings, the Court overruled the objections and granted both the Asset Purchase Motion and the Stipulation Motion (together, the "Sale and Stipulation Orders"). In granting the Asset Purchase Motion and the Stipulation Motion, the Court found that

---

**2.** On June 22, 2001, the Court entered an order granting the Motion for Joint Administration of Wolf Camera, Inc., WolfXpress.Com, LLC, Fox Photo Partner, Inc., and

Texas Photo Finish, LP. This Order references the jointly administered cases as the "Debtors' bankruptcy."

the value of the property being sold was less than the aggregate value of Wachovia's lien, rendering Kodak's subordinate claim worthless. (¶ 76).

The Stipulation Order describes the distribution of the proceeds of the Ritz Sale as follows: a) first, to satisfy all outstanding obligations under the DIP financing; b) second, $20 million to reduce the Pre–Petition Indebtedness; c) third, up to the next $25 million, to establish the administrative expense fund; and d) the balance, to reduce the Pre–Petition Indebtedness. (¶ 78). As additional adequate protection and in consideration for funding the administrative expense fund, the Pre–Petition Secured Lenders were granted a first priority claim against the proceeds of any avoidance action recoveries and any surplus remaining in the administrative expense fund after payment of permitted expenses. (¶ 79).

On January 28, 2002, the Committee commenced an adversary proceeding against Wachovia (the "Committee Adversary") generally seeking a determination of the validity, extent, and priority of the Pre–Petition Secured Lenders' claims and liens. (¶ 85). Kodak did not file a proceeding to challenge the interests of the Pre–Petition Lenders. Wachovia, the Debtors, and the Committee eventually reached an agreement to settle the Committee Adversary. On June 18, 2002, a motion was filed pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "9019 Motion"), seeking approval of the settlement of the Committee Adversary. (¶ 88). A hearing on the 9019 Motion was held on July 16, 2002, with appearances by the Debtors, the Committee, Wachovia, and Kodak. (¶ 92).

Kodak generally supported the 9019 Motion, but filed an objection based on two limited points: 1) that the dismissal of the Committee Adversary did not affect the rights of third parties against Wachovia; and 2) that the 9019 hearing did not constitute Kodak's opportunity to be heard on the issue of enforceability of the 1998 Subordination Agreement. (¶ 93). The Court approved the 9019 Motion and expressly found that the 1998 Subordination Agreement was enforceable. (¶ 94). The Court also found that Kodak had on several occasions been afforded a full and fair opportunity to be heard on the enforceability of the 1998 Subordination Agreement. (¶ 94).

After the Committee Adversary was settled, but prior to the 9019 hearing, Kodak commenced an adversary proceeding in the United States Bankruptcy Court for the Western District of New York (the "WDNY Adversary"),[3] seeking, among other things, the equitable subordination of the claims of the Pre–Petition Secured Lenders to Kodak's claim against the Debtors. (¶ 95). Kodak alleged that it was misled into extending the $30 million loan pursuant to the Second Amended and Restated Loan and Purchase Agreement. (¶ 96). Wachovia filed a motion to dismiss the WDNY Adversary; however, before responding to Wachovia's motion, but following the Court's approval of the 9019 Motion, Kodak voluntarily dismissed the WDNY Adversary. (¶¶ 97, 98). Shortly thereafter, Kodak filed an action against Wachovia in the Supreme Court of the State of New York, alleging breach of contract, tortious interference with contract, and fraud (the "New York Action"). (¶ 99). On diversity grounds, Wachovia caused the New York Action to be removed to the United States District Court

---

**3.** The WDNY Adversary was filed notwithstanding the absence of a pending bankruptcy case in that court relating to the Debtors. In fact, the WDNY Adversary utilized the caption of the Debtors' case pending in this Court.

for the Western District of New York. (¶ 100).

On August 30, 2002, the Debtors filed their First Amended Disclosure Statement and First Amended Plan of Liquidation. (¶ 102). The Disclosure Statement provided that "the Committee Stipulation [was] a critical prerequisite to the Plan as the Pre–Petition Bank Group would not be willing to compromise their Claims except as set forth therein." (¶ 103). An order confirming the Debtors' plan was entered on January 7, 2003.

On October 11, 2002, Wachovia, along with the Debtors, filed the Complaint. The Plaintiffs allege that the New York Action is barred by *res judicata* and equitable estoppel. Specifically, the Plaintiffs assert that based on the Final Order, the Sale and Stipulation Orders, and the Order approving the 9019 Motion, the claims asserted in the New York Action are barred. (¶ 112).

On October 16, 2002, Wachovia filed a Motion for Preliminary Injunction (the "Preliminary Injunction Motion"), and a hearing was scheduled for November 12, 2002. After arguments on the Preliminary Injunction Motion, the Court granted the Plaintiffs preliminary injunctive relief. The Court instructed the parties to confer regarding possible hearing dates so that a final hearing on the Preliminary Injunction Motion could be promptly scheduled. The parties conferred and agreed that instead of proceeding to a final hearing, Kodak would consent to the entry of a preliminary injunction and thereafter, file a motion to dismiss the Complaint. On November 21, 2002, the Court entered an order, as presented by the parties, granting the Preliminary Injunction Motion (the "Preliminary Injunction Order"). The Preliminary Injunction Order included scheduling deadlines agreed upon by the parties.

On December 2, 2002, notwithstanding Kodak's consent to the Preliminary Injunction Order, Kodak filed a Motion for Leave to Appeal the Order Granting Plaintiff's Motion for Preliminary Injunction (the "Leave Motion") and a Motion for Stay Pending Appeal (the "Stay Motion") seeking to stay the portions of the Preliminary Injunction Order that dealt with scheduling deadlines. As the parties themselves agreed to the scheduling deadlines, the Court denied the Stay Motion. The District Court also denied the Leave Motion, as it found that the matter was proceeding "quickly and efficiently" in the Bankruptcy Court.

### C. The New York Action

In the New York Action, Kodak seeks monetary damages from Wachovia based on three counts. First, Kodak alleges that Wachovia breached the 1998 Intercreditor and Subordination Agreements. (¶ 101). Second, Kodak alleges that Wachovia fraudulently induced Kodak to enter into the Second Amended and Restated Loan and Purchase Agreement. (¶ 101). Third, Kodak alleges that Wachovia tortiously interfered with the Second Amended and Restated Loan and Purchase Agreement. (¶ 101). Based on the allegations in the New York Action, Wachovia asserts that the New York Action is nothing more than an indirect attempt by Kodak to recover its $30 million subordinated loan by collaterally attacking the validity of the 1998 Intercreditor and Subordination Agreements in direct contravention of this Court's prior orders.

## II. DISCUSSION:

### A. Motion to Dismiss Standard

Kodak seeks dismissal of the Complaint pursuant to FED. R. CIV. P. 12(b)(1) and (6), made applicable to adversary proceedings by FED. R. BANKR. P. 7012. Kodak sets forth two grounds for dismissal: (1) this

Court lacks jurisdiction to enjoin Kodak's prosecution of the New York Action; and (2) the doctrines of *res judicata* and equitable estoppel do not apply to its asserted claims.

When a court considers a motion to dismiss, it must accept the facts pled in the complaint as true and in a manner most favorable to the plaintiff. This order incorporates by reference the allegations in the Complaint, with a synopsis of the material allegations delineated *supra.*

■ With respect to FED. R. CIV. P. 12(b)(1), the Court must first determine whether the attack on subject matter jurisdiction is "facial" or "factual." *See Lawrence v. Dunbar*, 919 F.2d 1525 (11th Cir. 1990). "Facial attacks" require the Court to determine "if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the motion." *Id.* at 1529 (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980) *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980)) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)). Alternatively, "factual attacks" challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside of the pleadings, such as testimony and affidavits, are considered." *Id.* The Motion constitutes a facial attack on the Complaint. As such, this Court must examine the Complaint, in a light most favorable to the Plaintiffs, and determine whether the Plaintiffs have sufficiently alleged a basis of subject matter jurisdiction.

■ A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) is analogous to a "facial attack" under FED. R. CIV. P. 12(b)(1). *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 (8th Cir.2003). The factual allegations in the complaint are presumed to be true and are viewed in a light most favorable to the plaintiff. *Tabas v. Greenleaf Ventures, Inc. (In re Flagship Healthcare, Inc.)*, 269 B.R. 721, 725 (Bankr. S.D.Fla.2001) (citing *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1198 fn. 2 (11th Cir.2001)). This Court must place a "very high burden" on the Defendant to show that the Plaintiffs "cannot conceivably prove any set of facts which would entitle [them] to relief." *Id.* at 725–26 (citing *Beck v. Deloitte & Touche et al.*, 144 F.3d 732, 735–736 (11th Cir.1998)).

### B. Arguments of the Parties and Conclusions of Law

Kodak first argues that this Court lacks jurisdiction to enjoin the prosecution of the New York Action because, at a minimum, the New York Action does not invoke this Court's "related to" jurisdiction. Additionally, Kodak argues that neither the Final Order nor any of the other relevant orders entered by this Court preclude prosecution of the New York Action based on the doctrines of *res judicata* and equitable estoppel.

The Plaintiffs argue that the issue is not whether this Court has jurisdiction over the New York Action. To the contrary, the Plaintiffs argue that this case is ultimately about the *res judicata* effect of this Court's prior orders. Moreover, the Plaintiffs argue that equitable estoppel prevents prosecution of the claims in the New York Action due to Kodak's representations throughout the Debtors' bankruptcy proceedings.

### 1. The Complaint Sufficiently Alleges a Basis for Subject Matter Jurisdiction.

■ The Court first notes that it is "extremely difficult to dismiss a [complaint]

for lack of subject matter jurisdiction."[4] *Garcia v. Copenhaver, Bell & Assoc., M.D.'s P.A.,* 104 F.3d 1256, 1260 (citing *Simanonok v. Simanonok,* 787 F.2d 1517, 1519 (11th Cir.1986)). The Court's jurisdictional authority is established in Title 28, section 157 of the United States Code. Section 157 provides the following jurisdictional categories: "(1) core proceedings,[5] which may be heard and resolved by the bankruptcy court, *see* 28 U.S.C. § 157(b)(1); (2) non-core, related proceedings, which the bankruptcy court may hear and submit proposed findings of fact and conclusions [of law] to the district court, *see* 28 U.S.C. § 157(c)(1); and (3) non-core, unrelated proceedings, over which the bankruptcy court lacks any jurisdiction." *In re M. Paolella & Sons, Inc.,* 85 B.R. 965, 969 (Bankr.E.D.Pa.1988).

The Complaint alleges three alternative grounds for jurisdiction. First, the Plaintiffs allege the matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K) and (O).[6] Alternatively, the Plaintiffs allege the matter is a non-core, related proceeding pursuant to 28 U.S.C. § 157(c). The Plaintiffs also allege the Court has continuing inherent jurisdiction, pursuant to section 105 of the Bankruptcy Code, to interpret, apply, and enforce its prior orders.

For each averred ground for jurisdiction, the Court finds the Complaint contains sufficient allegations to withstand a motion to dismiss. However, the Court finds it necessary only to address the allegations that support "related to" jurisdiction, as reliance on that ground alone would preclude dismissal of the Complaint.

The Eleventh Circuit has adopted the test enunciated by the Third Circuit for determining whether a proceeding is sufficiently related so as to confer federal jurisdiction. *See Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.),* 910 F.2d 784 (11th Cir.1990) (adopting the test for determining related jurisdiction as articulated in *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3rd Cir.1984)). The test is "whether the outcome of the proceeding could conceivably have an affect on the estate being administered in bankruptcy." *Pacor,* 743 F.2d at 994. As noted by the court in *Pacor:*

> [T]he proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way im-

---

**4.** The Court would further note that it is difficult to envision an instance where it would grant preliminary relief and then subsequently dismiss the complaint on a motion to dismiss. A plaintiff "need only make out a *prima facie* case of jurisdiction to fend off a motion to dismiss, it must meet a higher burden before preliminary relief will be granted." *Gear, Inc. v. L.A. Gear California, Inc.,* 637 F.Supp. 1323, 1327 (S.D.N.Y.1986) (citing *Visual Sciences Inc. v. Integrated Communications Inc.,* 660 F.2d 56, 59 (2d Cir.1981)).

**5.** The legislative history of section 157 indicates that Congress intended for "core proceedings" to be interpreted broadly; the sponsors repeatedly stated that 95 percent of

the proceedings brought before the bankruptcy court would be core proceedings. *Resolution Trust Corp. v. Best Prod. Co., Inc. (In re Best Products Co., Inc.),* 68 F.3d 26, 31 (2d Cir.1995) (citing 130 Cong. Rec. E1108–E1110) (daily ed. March 20, 1984) (statement of Representative Kastenmeier); *Id.* at H1848, H1850 (daily ed. March 21, 1984) (statement of Representative Kindness).

**6.** *See* 28 U.S.C. § 157(b)(2)(A) (matters concerning administration of the estate); 28 U.S.C. § 157(b)(2)(K) (determinations of the validity, extent or priority of liens); 28 U.S.C. § 157(b)(2)(O) (other proceedings affecting debtor-creditor relationships).

pacts upon the handling and administration of the bankrupt estate.

*Id.*

In the instant Motion, Kodak subscribes to a very myopic view of the facts of this case and the Third Circuit's ruling in *Pacor.* The Motion is replete with citations to *Pacor* and with assertions that this is simply a matter between two creditors and is unrelated to the underlying bankruptcy. The Court is unpersuaded by Kodak's arguments in this regard. As discussed *supra* and pursuant to *Pacor,* the Plaintiffs need only allege that the outcome of the New York Action "could conceivably have an affect on the estate."

In the Complaint, Wachovia alleges that the New York Action is nothing more than an attack on the validity, extent and priority of the their claims against the Debtors. Stated differently, Wachovia alleges that the $30 million in damages that Kodak is seeking in the New York Action, is the same $30 million which Kodak sought to equitably subordinate in the WDNY Adversary and the same $30 million which this Court determined was subordinate pursuant to the 1998 Subordination Agreement. Wachovia further alleges that their willingness to fund the administrative expense fund and support the Debtors' plan was predicated upon the resolution of any issue as to the validity, extent, and priority of their claim.

The Plaintiffs have not only alleged that the outcome of this matter "could conceivably have an affect on the estate being administered in bankruptcy," but the Plaintiffs have essentially alleged that the New York Action is ultimately an attempt by Kodak to determine the extent, validity, and priority of Wachovia's claims a core bankruptcy function. Accordingly, the Motion is denied to the extent that it seeks to dismiss the Complaint pursuant to FED. R. CIV. P. 12(b)(1).

### 2. The Complaint sufficiently alleges the elements of res judicata and equitable estoppel.

#### a. Res Judicata

■■■ The doctrine of *res judicata* provides that "[a] final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (citing *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948); *Cromwell v. County of Sac,* 94 U.S. 351, 352–353, 24 L.Ed. 195 (1876)). "[O]rders of courts having jurisdiction to enter them [must] be obeyed until reversed, even if proper grounds exist to challenge them. A challenge for error may be directed to the ordering court or a higher court, ... but it may not be made collaterally." *Spartan Mills v. Bank of America Illinois,* 112 F.3d 1251 (4th Cir.1997) (citing *Celotex Corp. v. Edwards,* 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995)).

■■■ For *res judicata* to apply to an order or judgment, the following conditions must be satisfied:

First, the prior judgment must be valid in that it was rendered by a court of competent jurisdiction and in accordance with the requirements of due process. Second, the judgment must be final on the merits. Third, there must be identity of both parties or their privies. Fourth, the later proceeding must involve the same cause of action as involved in the earlier proceeding.

*Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.),* 898 F.2d 1544, 1550 (11th Cir.1990) (citations omitted).

■■■ The Plaintiffs specifically allege that the Final Order, the Sale and

Stipulation Orders, and the order approving the 9019 Motion, all bar the New York Action pursuant to the doctrine of *res judicata.* First, no challenge to this Court's jurisdiction over the aforementioned orders has been, or could have been raised. Each order was valid and rendered by a court of competent jurisdiction; therefore, the first prong of the test has been satisfied. Second, both the Final Order and the Sale Order were final judgments on the merits.[7] *See In re Clinton Street Food Corp.,* 254 B.R. 523, 530 (Bankr.S.D.N.Y. 2000) (stating that a bankruptcy court's order "approving a sale of assets is a final order for *res judicata* purposes."); *In re Gloria Manufacturing Corp.,* 65 B.R. 341, 344–45 (E.D.Va.1985) (finding that financing orders "preclude the parties and their privies from relitigating issues that were or could have been raised..."). Third, Kodak and Wachovia are the only parties in the New York Action. For the purpose of former adjudication, a party includes "all who are directly interested in the subject matter and who have a right to make defense, control the proceedings, examine and cross-examine witnesses and appeal from the judgment if an appeal lies." *In re Justice Oaks II Ltd.,* 898 F.2d 1544, 1550–51 (11th Cir.1990) (citing 1 A. Freeman, *A Treatise of the Law of Judgments* § 430, at 936–37 (5th ed.1925)). "All creditors of a debtor are parties in interest." *Id.* at n. 5. Accordingly, for the purpose of *res judicata,* Kodak and Wachovia were parties to the Final Order, the Sale and Stipulation Orders, and the order approving the 9019 Motion. As such, there is

identity of parties, and the third prong of the test is satisfied.

The final prong is whether or not the New York Action involves the same cause of action as the prior orders of this Court. When claims arise out of the same transaction or series of transactions, the claims are a part of the same cause of action. *Id.* at 1552 (citing Restatement (Second) Judgments § 24 (1982)). The Plaintiffs allege that the enforceability of 1998 Subordination and Intercreditor Agreements was an integral part of the Sale and Stipulation Order, the order granting the 9019 Motion, and the Debtors' confirmed plan. The Plaintiffs allege that prior orders of this Court not only held that the 1998 Subordination and Intercreditor Agreements were enforceable, but that the Court also found that Kodak had been given a full and fair opportunity to be heard on the issue. The Plaintiffs further allege that not only was the WDNY Adversary predicated on the enforceability of the 1998 Subordination and Intercreditor Agreements, but the New York Action is a reincarnation of the WDNY Adversary, thinly veiled as an cause of action exclusively based on state law claims. In sum, the Plaintiffs allege that the New York Action is based on the same transaction or series of transactions that formed the basis of this Court's prior orders.

Based on the foregoing, the Court finds that the Complaint sufficiently alleges the elements of *res judicata* to withstand a

---

7. Kodak acknowledges in its Memorandum of Law in Reply and in Further Support of its Motion to Dismiss the Complaint and in Opposition to the Plaintiffs' Motion for Summary Judgment that each of the relevant prior orders of this Court have become final and nonappealable. Kodak states that it "strenuously rejects Wachovia's assertion that the findings, whether explicit or implicit in the prior or-

ders, constituted a final judgment on the merits of the causes of action in the New York Action." The Court notes that Wachovia's factual assertions that the prior orders were final on the merits of the New York Action sufficiently satisfy the Plaintiffs' burden on a motion to dismiss. As discussed *supra,* the facts are viewed in favor of the plaintiff.

motion to dismiss. Accordingly, the Motion is denied to the extent it seeks dismissal for failure to state a claim for relief based on *res judicata.*

### b. Equitable Estoppel

 Equitable estoppel "focuses on the relationship between the litigants and is intended to ensure fair dealings between the parties." *Hardy v. Hardy,* 1997 U.S. Dist. LEXIS 23938 at *15 (S.D.Ga. Jan. 30, 1997). For the doctrine of equitable estoppel to apply, the following conditions must be met:

> The person against whom the estoppel is to apply must have actual or constructive knowledge of the facts and must have induced, through his words or conduct, another to rely upon the purported representation. The party seeking to assert estoppel must have neither knowledge or reasonable means or opportunity of obtaining knowledge of the facts and must have relied upon the other party's representation to his detriment.

*Choat v. Rome Industries, Inc.,* 462 F.Supp. 728, 730 (N.D.Ga.1978) (citing *Atlantic Richfield Co. v. CRA, Inc.,* 430 F.Supp. 1299, 1303 (N.D.Tex.1975)).

 The Complaint sufficiently alleges the elements of equitable estoppel. First, the Plaintiffs allege that during the Debtors' bankruptcy, Kodak was aware of the facts that form the basis of the New York Action. More importantly, the Plaintiffs allege that while Wachovia was negotiating the Sale and Stipulation Motions, providing money for the administrative expense fund, allowing the Debtors to use their collateral, and settling the Committee Adversary, Kodak intermittently made objections, but never actually challenged the validity, extent, or priority of their claim. Second, the Plaintiffs allege that the Pre–Petition Lenders were induced, by Kodak's silence, to take positions in the Debtors'

bankruptcy which they would not have otherwise taken knowing that they would later be subject collateral litigation. Third, the Plaintiffs allege that Kodak's acquiescence to the validity of the 1998 Subordination and Intercreditor Agreements made it impossible for them to foresee the New York Action. To the contrary, the Plaintiffs allege that Kodak's actions throughout the bankruptcy indicated that the validity of the 1998 Subordination and Intercreditor Agreements was not an issue. Finally, the Plaintiffs allege that Wachovia relied on Kodak's silence and concessions to its detriment. Wachovia alleges that it would not have funded the administrative expense fund, nor would it have supported the Debtors' plan, if it would have known that it would still be subject to a $30 million lawsuit by Kodak.

Based on the foregoing allegations, the Court finds that the Complaint sufficiently alleges the elements of equitable estoppel, so as to withstand a motion to dismiss. Accordingly, the Motion is denied to the extent it seeks dismissal for failure to state a claim based on equitable estoppel.

### III. CONCLUSION:

For the foregoing reasons, the Court finds that the Plaintiffs have met the applicable standards for withstanding a motion to dismiss. The Plaintiffs have sufficiently alleged a basis of subject matter jurisdiction and have sufficiently alleged facts to support their *res judicata* and equitable estoppel claims. Accordingly,

**IT IS ORDERED** that the Motion be and is hereby **DENIED**.